**Curtis ARNOLD, Appellee,**

**v.**

**Patrick JONES; C/O Blythe; C/O Creeden; C/O Scheers; C/O Edwards; C/O Whitson; Lt. Olson, Appellants.**

**No. 89–1236.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1989.

Decided Dec. 21, 1989.

Rehearing Denied Jan. 19, 1990.

---

Kristin W. Ensign, Des Moines, Iowa, for appellants.

Michael D. Huppert, Des Moines, Iowa, for appellee.

Before MAGILL, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LARSON,* Senior District Judge.

MAGILL, Circuit Judge.

Curtis Arnold, an inmate at the Iowa State Penitentiary (ISP), sued various employees of ISP under 42 U.S.C. § 1983 (1982), for injuries he received when another inmate, Patrick Jones, beat him approximately fifteen times with a lead pipe. Arnold argues that the defendants[1] deprived him of his right to be free from cruel and unusual punishment under the eighth amendment because they failed to immediately intervene in the prison fight and stop the beating. The defendants moved for summary judgment on the grounds that they were entitled to qualified immunity and were therefore immune from liability. The district court denied defendants' motion for summary judgment holding that whether the guards acted reasonably in light of their duties under the circumstances in failing to immediately intervene was a question of fact not properly decided by a motion for summary judgment. Because we hold that the defendants are entitled to qualified immunity, we reverse.

---

* THE HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The named prison official defendants in Arnold's suit included officials Blythe, Creeden, Scheers, Edwards, Whitson, and Olson.

## I.

On February 11, 1985, Arnold, Jones and several other inmates were working in the dishroom of the ISP kitchen. At approximately 7:15 p.m., Arnold picked up a plastic tray cup, turned around and swung at Jones. Jones then ripped a three-foot metal support brace from a sink in the dishroom and began beating Arnold. One inmate who was standing nearby was inadvertently hit in the head by the metal bar Jones was swinging. There were ten inmates in the dishroom when the fight erupted, including Arnold and Jones. There were approximately seventy-five inmates outside the dishroom in the mess hall. There were no prison officials in the dishroom. They were stationed in the mess hall.

The prison officials were alerted to this disturbance in the dishroom by the noise of trays, cups and other kitchen equipment being knocked over, the sight of a piece of steel in the air visible through the dishroom window, and the gathering of many inmates around the window. As the defendants moved towards the dishroom, one inmate shouted that Jones had a weapon. Consistent with prison policy, however, the defendants were not armed.[2] They carried only radios.

Upon arriving in the dishroom, the defendants ordered Jones to stop and put down the pipe. Jones ignored the first command. Prison official Blythe stated in his deposition that the only way to stop the beating any sooner would have been to step between the piece of steel and Arnold, which was an option the officials were unwilling to exercise. Prison official Blythe did state, however, that if Jones had been beating a prison official he would have physically intervened.

The defendants again ordered Jones to put down the pipe. Jones then handed it to one of the officials. The entire episode from the beginning of the fight to the surrender of Jones lasted approximately ninety seconds. The district court placed great weight on inmate Morhead's deposition of what one official said after Jones

surrendered. Morhead stated, "[i]f I remember correctly, [the] officer that finally took the stick from [Jones] said ... 'You get it all out of your system,' or 'You all through.... I don't want to interfere here.'" Arnold suffered serious damage during the fight, including damage to his hand for which he had to undergo surgery.

## II.

In reviewing the district court's refusal to grant defendants' motion for summary judgment, we view the evidence in the light most favorable to Arnold. *See Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). However, because unarmed prison officials have no duty *as a matter of law* to physically intervene in a prison fight which may cause them serious injury or worsen the situation, we reverse the district court's denial of the summary judgment motion and rejection of defendants' qualified immunity defense.

Under § 1983, a prisoner may sue a state official in the official's individual capacity when acting "under color of any statute, ordinance, regulation, custom or usage, of any state ... [the official] causes to be subjected any [prisoner] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983 (1982). However, prison officials are generally immune from suit on the basis of qualified good faith immunity unless "their conduct ... violates clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Cleavinger v. Saxner,* 474 U.S. 193, 207, 106 S.Ct. 496, 503, 88 L.Ed.2d 507 (1985); *Brown v. Frey,* 889 F.2d 159, 164–165 (8th Cir.1989).

At the time of the altercation, Arnold had a clearly established right under the eighth amendment to be "reasonably protected from known dangers of attacks by fellow inmates." *Miller v. Solem,* 728 F.2d 1020, 1024 (8th Cir.), *cert. denied,* 469

---

**2.** The officials at ISP maintain control of the institution through diplomacy, not force.

U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984). The existence of a clearly established right, however, does not end our inquiry into whether defendants are entitled to qualified immunity. The defendants are still entitled to a good faith qualified immunity defense even if they were aware of a risk of injury to Arnold as long as they took appropriate steps to protect him from that known danger. *Id.* at 1024. Arnold claims that the failure of the defendants to physically intervene in the fight constituted a failure of constitutional dimensions to protect him from Jones.

■ In order to determine, however, whether the failure to physically intervene was constitutionally inappropriate, we must first determine as a matter of law whether the unarmed defendants, who were vastly outnumbered by the inmates, had a clearly established duty to physically intervene in a violent fight between inmates which may have led to the guards' own physical abuse and/or may have resulted in escalation of the disruption within the institution. If no such duty existed, then the defendants' refusal to physically intervene could not have been inappropriate and therefore the defendants would be entitled to qualified immunity. If such a duty existed, then a factual issue would be raised as to whether the

defendants' refusal to intervene was constitutionally appropriate.[3]

■ There was no clearly established duty in 1985[4] for the unarmed officers to physically intervene. Therefore, the defendants' refusal to physically intervene into the violent conflict was appropriate as a matter of law in that such a failure could not constitute deliberate negligence because the officials violated no constitutional duty to Arnold.[5] This is not a case where the officers stood around and did nothing. On the contrary, they ordered inmate Jones to stop his attack. There is no allegation that the verbal commands were inappropriate. In fact, after the second verbal order, Jones surrendered. Arnold emphasizes Blythe's deposition testimony that if Jones had been striking another officer he would have intervened but because he was attacking an inmate he did not intervene. Arnold concludes that this testimony leads to the existence of a factual dispute as to whether the guards violated his constitutional right to reasonable protection. We disagree. Merely because the officials would have intervened in a violent confrontation between an inmate and an officer even though they were under no constitutional duty to do so does not establish a factual dispute as to whether the guards had a duty to intervene on

---

**3.** There is a suggestion noted by the district court that certain defendants allowed Jones onto the premises against prison policy. Damage actions against governmental officials are subject to a heightened pleading standard. The plaintiff must plead facts with sufficient precision to provide defendants with notice of the substance of the claim and enable them to prepare a response and, if appropriate, a summary judgment motion based upon qualified immunity. *Brown v. Frey,* 889 F.2d at 170 (8th Cir. 1989) (citing *Martin v. Malhoyt,* 830 F.2d 237, 254 (D.C.Cir.1987)). Arnold's allegations do not meet this standard of pleading on the claim that the defendants allowed Jones, a kitchen employee for several months before the altercation, onto the premises against policy. Therefore, we reject this claim as insufficiently pled.

**4.** Defendants' reliance on *Williams v. Willits,* 853 F.2d 586 (8th Cir.1988), is misplaced. *Williams* was decided after the alleged violations in this case. Therefore, *Williams* is not helpful in determining whether a clearly established right existed in 1985.

**5.** Arnold argues that defendants are not entitled to an immediate appeal of the denial of their summary judgment motion on qualified immunity grounds under 28 U.S.C. § 1291 because serious factual disputes remain. Because defendants' qualified immunity claim turns on an issue of law, we reject Arnold's argument and hold that the district court's denial of the defendants' qualified immunity defense is immediately appealable. *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).

The statements relied on by the district court, which were allegedly made by a prison official to Jones after his surrender, do not alter this conclusion. Merely informing Jones after his surrender that they did not want to intervene and asking him if he got it all out of his system is not important because the officials had no constitutional duty to physically intervene. In any event, the officers did verbally intervene during the fight by ordering Jones to stop.

behalf of a prisoner. Because the officials had no duty to intervene, Blythe's statements that he might intervene in another situation does not change the fact that there was no legal duty. The defendants' refusal to physically intervene could not, as a matter of law, constitute an eighth amendment violation actionable under § 1983 because their refusal was not constitutionally inappropriate. Because defendants verbally intervened and there is no allegation of any additional steps the officials should or could have taken short of physical intervention, we hold that defendants are entitled to qualified immunity.[6]

Finally, Arnold's reliance on *Branchcomb v. Brewer*, 669 F.2d 1297 (8th Cir. 1982) (per curiam), is misplaced. *Brewer* did not present the issue we decide today of whether the prison officials have a duty to physically intervene in a violent conflict when such intervention may lead to the officials' own abuse or the worsening of the conflict. *Brewer* instead involved an attack and homosexual rape of one inmate by another out of the presence of the guards. There was no risk of serious harm to the guards from intervention as there was in this case.

### III.

We reverse the district court's denial of the defendants' motion for summary judgment because we hold that they are entitled to qualified good faith immunity.

---

**6.** Arnold also argues that the State of Iowa Department of Corrections' policy on "Use of Force/Use of Force to Prevent Escape" clearly states that the prison officials must take immediate action to stop an inmate from harming other inmates. Arnold's reliance on this policy statement is misplaced. Section 1983 provides relief only for violation of federal law. Arnold does not argue that this state policy raises any federal interests the violation of which can be remedied by § 1983. Whether or not the defendants failed to adhere to the state policy is of no consequence in a suit alleging deprivation of federal rights. 42 U.S.C. § 1983 (statute provides relief when clearly established *federal rights* are violated).