No. 94-3607

Christopher Lee Prosser          *
                                 *
     Appellee,                   *
                                 *  Appeal from the United States
          v.      *  District Court for the
                                 *  Western District of Missouri.
Davis L. Ross, CO I,             *
                                 *
     Appellant.                  *


Submitted:  September 15, 1995

Filed: December 1, 1995


Before WOLLMAN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
     Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

     David Ross appeals the district court's denial of his motion for
summary judgment on his defense of qualified immunity.  We reverse.


**I.**

     Appellee Christopher Prosser is an inmate at the Jefferson City
Correctional Center who sustained permanent injuries when inmate Charles
Pilgrim attacked him.  Prosser and Pilgrim were housed in adjoining cells
in Housing Unit 3-A.  A few days prior to the incident, a disturbance
(characterized by both parties as a "small-scale riot") occurred in the
prison recreation yard.  Because of the riot, prison officials placed Unit
3-A in "lock-down," that is, prisoners were forced to remain in their cells
twenty-four hours a day.  On the day that Prosser was injured, the

prison officials partially lifted the lock-down to allow the inmates to eat in the cafeteria.  When Prosser stepped out of his cell to file into the lunch line, Pilgrim hit him over the head with what witnesses described as a metal can concealed in a sock or towel.  Prosser fell to the ground, and Pilgrim began to kick him in the stomach, chest, and face.  The attack ended when several guards forcibly intervened.

When the attack began, Ross was stationed as a prison guard in Unit 3-A.  The evidence is uncontroverted that he was standing alone at the end of the walkway, near Prosser's and Pilgrim's cells.  More than a dozen prisoners stood between him and the other prison guards at the far end of the walkway.  When Pilgrim hit Prosser, Ross did not intervene; instead, he ran to the other end of the walkway to seek help.  A short while later, several guards arrived and pulled Pilgrim off Prosser, and Prosser was rushed to the hospital.

Prosser filed this action under 42 U.S.C. § 1983 against Ross, claiming that Ross violated his Eighth Amendment right to be free from cruel and unusual punishment.  He maintains that Ross acted unconstitutionally by failing to prevent Pilgrim's attack, by allowing Pilgrim to "lie in wait" outside his cell, by failing to intervene immediately to stop the attack, and by waiting too long to seek assistance from other guards.  (Prosser also offered evidence that Ross attempted to hire another inmate to kill him after he filed this lawsuit.  We believe that this evidence, besides being inherently improbable, is not probative on the question of Ross's animus at the time of Pilgrim's attack, even if that animus itself were somehow relevant to Prosser's claims.)  The district court denied Ross's motion for summary judgment on his qualified immunity defense because it found that "material factual disputes on plaintiff's claims against defendant Ross" precluded

it.  The district court did not indicate in its order what material facts it believed were in dispute.

## II.

We must first determine whether this appeal is properly before us. Although some orders denying qualified immunity are appealable before trial, Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), the Supreme Court has recently indicated that our jurisdiction in such cases extends only to "abstract issues of law."  Johnson v. Jones, --- U.S. ---, 115 S. Ct. 2151, 2158 (1995).  This limitation will sometimes make it difficult to determine whether jurisdiction exists because deciding whether an officer is entitled to qualified immunity requires a "fact-intensive" inquiry.  Reece v. Groose, 60 F.3d 487, 490 (8th Cir. 1995).  Here, however, we believe that the facts required to determine whether Ross is entitled to qualified immunity are not genuinely in dispute.  We therefore have jurisdiction.

## III.

Ross is entitled to qualified immunity unless he violated Prosser's "clearly established" constitutional rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Johnson v. Boreani, 946 F.2d 67, 69 (8th Cir. 1991). The right must be clearly established in a particularized sense:  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 639 (1987).

The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. Farmer v. Brennan, 114 S. Ct. 1970, 1976 (1994).  Prison officials violate this right, however, only when they exhibit a "deliberate or callous indifference to inmate's safety."  Davidson v. Cannon, 474 U.S. 344, 347 (1986); Andrews v. Siegel, 929 F.2d

1326, 1330 (8th Cir. 1991) (holding prison official must have acted with "reckless disregard" for the inmate's safety).

Taken together, the cases indicate that Ross is entitled to qualified immunity unless a reasonable official would have known that Ross's actions constituted a deliberate, callous, or reckless disregard for Prosser's safety. With this principle in mind, we review each of Prosser's allegations in turn.

**A.**

Prosser alleges first that Ross unconstitutionally failed to prevent Pilgrim's attack. We find in the record no evidence whatsoever to support this allegation. Prosser himself admitted in his deposition that the attack took him by surprise. There was no evidence that the two inmates harbored any hostile feelings toward one another; indeed, the two had never had so much as a disagreement.

We have held that prison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another. See Falls v. Nesbitt, 966 F.2d 375, 379-80 (8th Cir. 1992); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990). This is true even if the official knows (as Prosser alleges) that the attacking inmate may be dangerous or violent. Falls, 966 F.2d at 379. Given the surprise nature of the attack, Ross is entitled to qualified immunity despite his failure to prevent the attack on Prosser.

**B.**

Prosser also alleges that Ross allowed Pilgrim to "lie in wait" outside his cell and attack him as he exited. The record is again devoid of evidence that Ross behaved recklessly. In his deposition, Prosser speculated that because he was attacked immediately upon exiting his cell, Pilgrim must have been standing

-4-

outside the cell when the doors opened.  He further speculated that Ross recklessly allowed Pilgrim to move against the flow of the lunch line and stand next to his cell door.

We regard all of Prosser's assertions as purely conjectural.  Miller v. Solem, 728 F.2d 1020, 1024 (8th Cir. 1984) ("Conclusive assertions of ultimate fact are entitled to little weight when determining whether a non-movant has shown a genuine issue of fact."); 10A Charles A. Wright et al, Federal Practice and Procedure, Civil 2d §§ 2727, 2731.  Prosser could not have seen the events leading up to the attack; he exited his cell after the other inmates because he was dressing when the doors opened.  Furthermore, while it is true that Pilgrim had to move against the flow of the lunch line to attack Prosser, Pilgrim's cell was located right next to Prosser's. Prosser testified that the distance between the two cell doors was only three to four steps.  He also testified that twenty to thirty other inmates were standing on the walkway.  Because the inmates had been in "lock-down" for several days, an atmosphere of general commotion pervaded the housing unit.  Given these circumstances a reasonable official would have not have concluded that he was recklessly disregarding Prosser's safety by allowing Pilgrim to take three steps toward Prosser's cell door.

## C.

Prosser's third claim is that Ross violated his Eighth Amendment rights by failing to intervene in the attack.  Prosser asserts that the situation posed no danger to Ross and that therefore the decision not to intervene violated his clearly established rights.  But we have held that prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm.  Arnold v. Jones, 891 F.2d 1370, 1373 (8th Cir. 1989).  We have also held that prison guards are not

constitutionally required to intervene in violent fights between inmates when the inmates outnumber guards. Id. In this case, both of these principles are applicable. Prosser admits, and other witnesses' depositions confirm, that Pilgrim was armed, and although the precise nature of the weapon remains unclear, the weapon was formidable enough to inflict permanent injuries. It is also undisputed that Ross was alone at the end of the walkway, with at least a dozen inmates standing between him and the other guards.

The fact that inmate witnesses testified that Ross was not in danger cannot change these facts. These assertions, again, are merely conjectural. See Miller v. Solem, 728 F.2d at 1026. Even if they were taken as true, however, Ross would be entitled to qualified immunity. Given the facts as he observed them, his actions were not objectively unreasonable since a reasonable official might well have believed that the situation threatened his safety. Anderson v. Creighton, 483 U.S. at 639.

**D.**

Finally, Prosser claims that Ross waited an excessive amount of time before he sought help. Prosser's only support for this claim is inmate Dennis Blackman's deposition testimony that Ross waited at the end of the walkway for thirty seconds after the attack began. Prosser argues that this testimony creates a genuine issue of fact on the question of whether Ross recklessly disregarded his safety. We disagree.

The difficulty with Blackman's testimony is that it contradicts Prosser's own characterization of the events. In his initial complaint, Prosser alleged that Ross ran away as soon as Pilgrim began to attack him, and it was only in the context of his response to Ross's summary judgment motion that Prosser claimed that Ross waited too long before seeking help. Prosser repeated his original description of the events in his deposition,

testifying that "he [Pilgrim] only hit me one time before Ross ran." We have held that a party cannot avoid summary judgment by contradicting his own earlier testimony. <u>Wilson v. Westinghouse Elec. Corp.</u>, 838 F.2d 286, 289 (8th Cir. 1988); <u>Camfield Tires, Inc. v. Michelin Tire Corp.</u>, 719 F.2d 1361, 1365-66 (8th Cir. 1983). <u>Wilson</u> and <u>Camfield Tires</u> involved slightly different situations from the one posed by the instant case; in both of those cases, the plaintiff sought to create a triable issue by submitting an affidavit contradicting his own earlier testimony. <u>Wilson</u>, 838 F.2d at 289; <u>Camfield Tires</u>, 719 F.2d at 1365. Surely, however, the principle of these cases will extend to one in which a plaintiff attempts to avoid summary judgment by proffering testimony from another person that contradicts the plaintiff's own testimony.

Our conclusion that Blackman's testimony cannot raise a material issue of fact is strengthened by the fact that Blackman's testimony is itself fraught with contradictions. Blackman initially testified that Ross sought help immediately:

> Q:    Okay.  And what happened immediately after that?
> A:    I stepped out.  I saw the tall guy swing and hit Mr. Prosser, and I looked up, and I was -- I see him go down, and I looked up, because I saw somebody just kind of moving past me, and I looked by, and it was like, you know, saw a brown uniform and saw it was Ross.

Then, when he was asked how much time elapsed before Ross ran past him Blackman replied, "about thirty seconds, I'd say." On cross-examination, Blackman again changed his testimony, indicating that less than thirty seconds elapsed. Later yet, at Prosser's urging, Blackman indicated "it was a long time" before Ross sought assistance. We are mindful of our obligation to credit all of the evidence that favors the nonmovant, <u>see, e.g., Anderson v. Liberty</u>

<u>Lobby</u>, 477 U.S. 242, 255 (1986), but we are not aware of any duty on our part to prune a witness's testimony so as to create a triable issue when the witness flatly contradicts himself in other parts of his testimony.

Summary judgment is proper unless "the evidence, viewed in the light most favorable to [Prosser], is such that a reasonable jury could return a verdict in his favor." <u>Foster v. Metropolitan Airports Comm'n</u>, 914 F.2d 1076, 1081 (8th Cir. 1990). Because Blackman himself is at best uncertain about how much time, if any, passed before Ross sought help, we believe that no reasonable jury could return a verdict for Prosser based on his testimony. Furthermore, Blackman's uncertainty indicates that his assertion that Ross waited thirty seconds is mere speculation. As we have already stated, such speculation does not create a genuine issue of fact. <u>Miller v. Solem</u>, 728 F.2d at 1024.

## IV.

We conclude that a reasonable official in Ross's position at the time the attack occurred would not have believed that his actions violated Prosser's clearly established constitutional rights. Ross is therefore entitled to qualified immunity as a matter of law.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.