Johnny **LACY, Jr.,** Plaintiff,

v.

Gerald A. **BERGE, Dennis Meier, Laura Flood, Paul Pausma, Thomas Gozinske, Sergeant Kok, Brian Lutzow and Nurse Rochelle,** Defendants.

No. 94–C–983.

United States District Court, E.D. Wisconsin.

March 30, 1996.

Johnny Lacy, Jr., Pro Se.

Richard A. Perkins, Assistant Attorney General, Madison, WI, for Defendants.

### DECISION AND ORDER

CURRAN, Judge.

Johnny Lacy, Jr., a prisoner in state custody, is suing Defendants Gerald A. Berge, Dennis Meier, Laura Flood, Paul Pausma, Thomas Gozinske, Sergeant Kok, Brian Lutzow and Nurse Rochelle for violating his civil rights while he was incarcerated at the Fox Lake Correctional Institution. Lacy claims that Defendant Kok failed to break up a fight between himself and another inmate, Defendant Lutzow, and that Defendant "Nurse Rochelle"[1] failed to render adequate medical care for the injuries he sustained in the fight. He also claims that the Defendants improperly investigated the incident, then refused to press criminal charges against Lutzow. Finally, Lacy alleges that the Defendants failed to protect his constitutional rights because he is black. He is seeking injunctive relief and money damages for his injuries pursuant to 42 U.S.C. § 1983.

After the time period set by the court for the completion of all discovery had passed, the Defendants moved for summary judgment on the ground that no material facts are in dispute and that they are entitled to judgment as a matter of law. See Federal Rule of Civil Procedure 56. The Defendants notified Lacy of his obligation to respond to their motion with affidavits or other evidence, and the Plaintiff responded by filing a cross motion for summary judgment. These motions are now fully briefed and ready to be resolved.

### I. FACTS

In support of their motion for summary judgment, the Defendants[2] have proposed the following findings of fact which are supported by affidavits and other evidence in the record:

1. Plaintiff Johnny Lacy is an inmate who at all times material was incarcerated at the Fox Lake Correctional Institution (FLCI), Fox Lake, Wisconsin. Lacy is currently housed at Racine Correctional Institution, Sturtevant, Wisconsin.

2. Plaintiff brings his § 1983 action claiming that the defendants violated his constitutional rights in conjunction with an altercation between Lacy and defendant Brian Lutzow on July 5, 1994 at FLCI.

3. Defendants Berge, Meier, Flood, Pausma, Gozinske, Kok and Mayr were at all times material to this action employees of FLCI.

4. [Left blank by the movants]

5. At approximately 9:25 p.m. on July 5, 1994, defendant Kok, the unit sergeant stationed in Housing Unit 2 A–B wing office, heard a commotion that sounded like someone slipping on the tile in one of the bathrooms.

6. When Kok observed the inmates in the B-wing dayroom, it appeared that something was going on in the bathroom as numerous inmates had left their chairs to look through the dayroom window into the bathroom area.

7. Kok left the office and entered the B-wing dayroom to investigate when several inmates yelled out, "here come the police." Kok looked into the B-wing bathroom and saw Johnny Lacy on his hands and knees and inmate Brian Lutzow on top of him. Lacy and Lutzow stopped fighting when Kok entered the bathroom.

8. When Kok realized that something unusual was occurring in the bathroom he

---

**1.** The Defendants have identified "Nurse Rochelle" as Rochelle Mayr.

**2.** Lacy has also proposed findings of fact, but because his "facts" are set forth in narrative form, rather than numbered paragraphs, the court will incorporate them into its discussion only where the facts are undisputed and material.

responded and investigated immediately. Kok neither ignored the altercation between Lacy and Lutzow, nor did the fight continue after he entered and confronted them in the bathroom.

9. Defendant Kok then called and reported the disturbance to defendant Paul Pausma, a supervising officer, who reported to the unit and assumed investigation of the incident and handling of the two inmates.

10. When Kok asked about [the] incident, inmate Lutzow stated that Lacy had been telling Unit 2 inmates that he was going to force inmate Lutzow [to] perform oral sex on him. Lutzow was evidently displeased with Lacy's plan, confronted Lacy in the bathroom and they started wrestling.

11. Lacy told Kok that he was coming out of the shower just minding this [sic] business and didn't say or do anything to anyone.

12. Defendant Pausma reported to the unit to investigate the incident and question inmates Lacy and Lutzow and subsequently placed both inmates in temporary lockup status pending further investigation.

13. In his statement in response to reasons for TLU placement, plaintiff explained that he had grabbed on to Lutzow because he was dazed after receiving blows to the head and wanted to avoid being hit again. Lacy admitted having heard someone say "Here comes the police," but nonetheless continued to hold on to Lutzow. Lutzow's statement in response to reasons for placement was simply that it wasn't a one-sided fight; that Lacy had hit him.

14. Once transferred to the segregation building, Pausma directed staff to take photographs of injuries Lacy had sustained as a result of the fight and to contact the Health Services Unit to have a nurse come to the unit to examine Lacy.

15. Nurse Rochelle Mayr was on duty in the HSU on July 5, 1994. At approximately 9:45 p.m. she was called to the segregation unit to examine inmate Johnny Lacy, who had been involved in an altercation.

16. When Mayr arrived Lacy complained of a headache, impaired hearing on the left side, blurry vision in his left eye, and that he was knocked down and hurt his shins.

17. Nurse Mayr examined Lacy and observed abrasions to his left temple and left parietal area of the skull one approximately 2″ × 1½″ and the other approximately 4–5″ × 2–2½″. Neither abrasion was bleeding. She further observed a small abrasion to the anterior surface skin of his left leg, and a contusion on his right knee that was approximately 2 centimeters in diameter with no active bleeding.

18. Defendant Mayr conducted basic neurological tests and found Lacy demonstrated normal responses: his speech was clear and coherent and his gait was steady.

19. It was Mayr's assessment that Lacy displayed signs of trauma to the head. She arranged for Lacy to have an ice pack for his head injuries and prescribed Advil or Tylenol as needed for his headache, both of which were available on the segregation unit.

20. The signs and symptoms of head injury were explained to Lacy by Nurse Mayr and she arranged for security staff to wake him every two hours so that he could self-monitor for symptoms. She instructed Lacy to report any detected change in head injury signs and symptoms and advised security staff that the HSU be alerted of same.

21. Mayr applied antibiotic ointment to Lacy's wounds and instructed Lacy in self care in that regard.

22. Lacy did not express dissatisfaction with the treatment defendant Mayr administered to him, nor did he request or require further medical treatment on July 5, 1994.

23. Defendant Pausma interviewed inmate Lutzow on July 6, 1994 about his involvement in the altercation. Lutzow admitted that he had hit Lacy, that they fought, and that Lacy fought back. He also stated that he did not strike Lacy with any objects or weapons.

24. Lutzow went on to explain to Pausma that he confronted plaintiff because Lacy had expressed his intentions to sexually assault Lutzow to a number of Unit 2 inmates.

25. Based upon his admissions to Pausma, on July 6, 1994 Pausma wrote and [sic] Lutzow a conduct report charging him with violation of DOC 303.12, Battery. Plaintiff Lacy was issued no conduct report nor any form of discipline for his part in the altercation and was released from temporary lockup status and returned to general population on July 8, 1994.

26. Lacy wrote to Security Director Meier on July 7, 1994 expressing his desire to press formal charges against inmate Brian Lutzow based on the physical confrontation between the two in the Unit 2 B-wing bathroom on July 5, 1994. Lacy claimed that Lutzow struck him repeatedly with a blunt object that caused him injuries.

27. Meier responded to Lacy's correspondence on July 27, 1994 advising him that he had reviewed the [sic] Lutzow's conduct report issued in conjunction with the fight, and had determined not to refer the case to the district attorney.

28. Under DOC 383.73, Admin.Code, when an inmate is alleged to have committed a statutory crime considered for prosecution by the local district attorney, such as battery, the security director shall review the conduct report to determine if the case is appropriate for referral.

29. Defendant Meier's decision was based not only upon review of the conduct report but all relative documentation. In his estimation, the incident was not of sufficient seriousness to warrant referral for criminal prosecution.

30. Copies of all related documentation were provided to Detective Zuleger of the Dodge County Sheriff's Department. Detective Zuleger conducted an investigation of the July 5, 1994 incident on behalf of the Dodge County district attorney subsequent to an inquiry by Lacy. Meier withheld no evidence from Detective Zuleger.

31. On July 13, 1994, Lacy filed Inmate Complaint FLCI 835–94 claiming that de-fendant Kok failed to protect him from injuries he sustained when on July 5, 1994 he was involved in a fight with another inmate in the Unit 2 bathroom. Lacy alleged that Kok was not present in the unit to protect him from the assault of another inmate, and that inmate Lutzow assaulted him as part of a gang initiation.

32. Defendant Gozinske conducted interviews of Lt. Pausma on July 14, 1994 and Sgt. Kok on July 19, 1994 in the course of his investigation of this complaint. Additionally, he reviewed Incident Report 238283, the conduct report that was issued to inmate Brian Lutzow, and various other documents related to the July 5, 1994 incident.

33. Gozinske concluded that Lacy's account of the July 5, 1994 incident was not credible. The documentary evidence and interviews supported the fact that the fight broke up when the Unit 2 inmates watching from the dayroom yelled to Lutzow and Lacy, "here come the police" (defendant Kok). Further, Gozinske could find no one to corroborate Lacy's allegation that Lutzow's actions were motivated by a gang initiation.

34. On July 25, 1994 defendant Gozinske issued a recommendation that the complaint be dismissed and on July 28, 1994, warden Berge accepted the recommendation.

35. Lacy appealed the warden's dismissal to the Corrections Complaint Examiner on August 8, 1994. In the Report of Corrections Complaint Examiner, dismissal was recommended citing, "The official documentation concerning the incident in question contradicts Mr. Lacy's specific allegations and I find no cause to question the accuracy of the record," and on January 30, 1995 the Corrections Complaint Examiner's recommendation to dismiss the complaint was accepted as the decision of the Secretary.

36. Lacy filed another related complaint (FLCI 842–94) on July 15, 1994 claiming that the institution refused to refer the battery charges against inmate Lutzow to the district attorney for prose-

cution solely because Lacy is black and Lutzow is white.

37. Pursuant to DOC 303.72, the security director shall review the conduct report in light of the policy to determine if the case should be referred to the district attorney. Defendant Meier had reviewed the conduct report issued to inmate Lutzow and determined that battery was not of sufficient seriousness as to warrant a referral for prosecution. Race was not a determining factor in that decision

38. Gozinske recommended that the complaint be dismissed on July 25, 1994 and warden Berge accepted his recommendation and dismissed the complaint on July 28, 1994.

Defendants' Proposed Findings of Fact at 1–8 (citations omitted).

## II. *LEGAL STANDARDS FOR SUMMARY JUDGMENT*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Materiality is determined by assessing whether the fact in dispute, if proven, would satisfy a legal element under the theory alleged or otherwise affect the outcome of the case. *Id.* at 247, 106 S.Ct. at 2509–10.

When faced with a properly supported motion for summary judgment, the non-moving party, is required to provide evidence that would permit a reasonable jury to find in his favor. *See Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). Mere allegations or denials of the adverse party's pleadings are not enough to prevent issuance of summary judgment. The adverse party's response to the summary judgment motion must "set forth specific facts showing that there is a genuine issue for trial." Federal Rule of Civil Procedure 56(c).

The moving party is entitled to summary judgment where "the non-moving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Any factual assertions contained in affidavits and other evidence in support of the moving party's motion for summary judgment are accepted as true unless the facts are controverted by the non-moving party through affidavits or other documentary evidence.

In resolving the summary judgment motion, all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Sample v. Aldi, Inc.,* 61 F.3d 544, 546 (7th Cir.1995); *Kirk v. Federal Property Management Corporation,* 22 F.3d 135, 138 (7th Cir.1994). However, as the Supreme Court has explained, "If the evidence is merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as to the material facts,' summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (quoting *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). Mere conclusory assertions, unsupported by specific facts, made in depositions or affidavits opposing a motion for summary judgment, are not sufficient to defeat a properly supported motion for summary judgment. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990) ("[t]he object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985)

("[c]onclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact").

■ Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Staren v. American National Bank & Trust Company,* 529 F.2d 1257, 1261 (7th Cir.1976). Instead, the court must determine if the nonmovant's evidence is sufficient by considering the substantive evidentiary standard of proof (which in this case is a preponderance of the evidence) that would apply at a trial on the merits. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

The court will now apply these legal principles to the facts of this case and the claims raised by Lacy.

### III  *DISCUSSION AND DECISION*

### A.  PERSONAL INVOLVEMENT

■ As a threshold matter, the court finds that, faced with a challenge from the Defendants, Plaintiff Lacy has supplied no factual basis for a finding that Defendant Laura Flood was personally involved in any of the incidents giving rise to this action. A Plaintiff can recover money damages under section 1983 only if the Defendant was personally involved in the deprivation of his constitutional rights. *See Moore v. Indiana,* 999 F.2d 1125, 1129 (7th Cir.1993). "[A] official meets the personal involvement requirement when he acts or fails to act with a deliberate or reckless disregard of the plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge or consent." *Black v. Lane,* 22 F.3d 1395, 1401 (7th Cir.1994).

In this case, Flood is not identified by role, occupation, or any official or personal capacity in the pleadings or motion papers. Lacy says that he contacted her about referring Lutzow for criminal prosecution, but he does not establish that she had any duty or authority to act. Therefore, all claims against Defendant Flood will be dismissed.[3]

### B.  FAILURE TO PROTECT

■ Lacy's first claim is that Defendant Kok observed him fighting with Lutzow and failed to intervene, thereby subjecting Lacy to cruel and inhuman treatment in violation of the Eighth Amendment. The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. *See Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). Prison officials violate this right, however, only when they exhibit a "deliberate indifference to [an] inmate's safety." *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986).

■ Although the Eighth Amendment imposes a duty upon prison officials to protect prisoners from one another, this duty "does not lead to absolute liability." *McGill v. Duckworth,* 944 F.2d 344, 347 (7th Cir. 1991), *cert. denied,* 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992). Rather, because the Eighth Amendment speaks only to "punishment," prison officials who fail to prevent an injury inflicted by fellow prisoners are liable only where these officials possess the requisite mental state. *Id. See also Duane v. Lane,* 959 F.2d 673, 676 (7th Cir. 1992). The requisite mental state is intent or "deliberate indifference," that is, where the official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate a readily preventable injury. *See Farmer,* —— U.S. at ——, 114 S.Ct. at 1984; *Gibbs v. Franklin,* 49 F.3d 1206, 1207–08 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995).

In Lacy's case, the facts surrounding his claim that Kok failed to protect him are in dispute. Lacy alleges in his Amended Complaint that Kok stood and watched the fight, then left without saying anything, locking the

---

**3.** The court notes that, although Lacy himself failed to allege or establish any personal involvement by Defendants Berge or Gozinske, the De-

fendants have supplied a factual basis for their involvement.

door behind him.[4] Kok, on the other hand, relates that he heard a disturbance and, as he walked toward the room where the fighting was going on, prisoners warned of his approach and the fight stopped. Kok says he then telephoned for help. *See* Affidavit of Bradley Kok at ¶¶ 3–7.

Assuming, for purposes of this motion, that all Lacy's allegations are true and that Kok briefly watched the fighting and did not intervene, Lacy has still not established that Kok acted with deliberate indifference because he has not established that the violent fight he describes was "readily preventable" or that it would have been reasonable for Kok to have tried to stop the fight. The Eighth Circuit has held that prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm. *See Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir.1995); *Arnold v. Jones*, 891 F.2d 1370, 1373 (8th Cir.1989). Here, Lacy claims that Lutzow was armed with a shampoo brush with which he was beating him unconscious. And even if Kok was not in danger from the weapon, Lacy has presented nothing from which the court could infer that Kok, acting alone, could have ended the fight any sooner than it did.

In sum, Lacy has failed to make a sufficient showing that Kok acted with the requisite mental state when he failed to intervene in the fight. Because Lacy has failed to meet his burden of producing enough probative evidence to raise a jury question on this issue, summary judgment will be granted in favor of the Defendants on this Eighth Amendment claim.

## C. EQUAL PROTECTION

Next, the Plaintiff makes the conclusory allegation that the Defendants improperly investigated the fight and refused to prosecute Lacy's attacker because Lacy is black and Lutzow is white. In support of this contention Lacy has submitted two affidavits from prison inmates who state that, in general, black prisoners are treated differently in Wisconsin prisons. *See* Affidavit of Quon Yerger; Affidavit of Robert Vines. Neither inmate alleges firsthand information concerning the incidents upon which Lacy is predicating his claims in this case or even first-hand information concerning similar incidents. Neither these affidavits nor Lacy's own conclusory and unsupported allegations can raise a jury question on this issue at the summary judgment stage. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). Therefore, because nothing in the record supports Lacy's claim of bias, summary judgment will be granted as to this claim.

## D. FAILURE TO PROSECUTE AND TO INVESTIGATE

In addition to his failed equal protection claim, Lacy alleges that the Defendants violated state regulations and his civil rights when they failed to investigate the fight thoroughly and honestly and when they failed to refer Lutzow to a district attorney for criminal prosecution. Violations of state regulations do not implicate federal constitutional rights and Lacy has cited no authority for his claim that he has a constitutional right to have a third person prosecuted by the state criminal justice system. *See Reed v. City of Chicago*, 77 F.3d 1049, 1054 (7th Cir.1996). In any case, it does not appear that Lacy suffered any harm from the investigation or the nonprosecution of Lutzow. The undisputed facts also show that, after prison authorities decided not to refer Lutzow for prosecution, Lacy directed an inquiry to the Dodge County (Wisconsin) District Attorney who conducted another in-

---

4. The court is disturbed at the seeming contradictions in Lacy's story. In his pleadings he implies that he personally observed Kok watching the fight and that the fighting continued while Kok watched. However, his signed statements, given to prison officials investigating the incident, tell a different story. In these papers he says that other inmates told him that Kok watched the fight but that he had no first-hand knowledge of Kok's presence because he was almost unconscious. In those same documents he admits that he heard other inmates yell "here come the police" before the fight stopped. *See* Affidavit of Paul Pausma at Exhibit 102; Affidavit of Thomas Gozinske at Exhibit 106.

vestigation before deciding not to prosecute. Moreover, the undisputed facts show that Lacy himself was not disciplined and that he was returned to the general prison population. Under these circumstances, summary judgment will be granted in favor of the Defendants on these claims.

### E. MEDICAL CARE

Finally, Lacy claims that Defendant Rochelle Mayr, the prison nurse, violated his Eighth Amendment rights when she failed to render adequate medical care following the fight. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes, including punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (citations omitted). The Eighth Amendment applies to prison officials when they provide medical care to inmates. *See generally Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

To establish an unconstitutional denial of medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." *Id.* at 104, 97 S.Ct. at 291. The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). Second, the charged official must act with a sufficiently culpable state of mind. *See Wilson,* 501 U.S. at 298, 111 S.Ct. at 2323–24. Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *See Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). More specifically, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists...." *Id.* at ——, 114 S.Ct. at 1979.

In this case, the medical records submitted by Lacy reveal that, immediately after the fight, Nurse Rochelle treated him for cuts and a possible head injury. The records also show that she continued to treat him and to monitor his recovery.

Despite Nurse Rochelle's efforts, Lacy complains that at some later time he began to suffer from a "crook" in his neck, headaches and rectal bleeding. In March of 1995, eight months after the fight, Lacy saw a physician and reported these conditions before being treated for rectal prolapse. Lacy attributes these conditions to the fight, but he has failed to name an expert medical witness who could establish causation. Because causation under these circumstances is not within the common knowledge of a lay person, the court cannot draw the inference that Lacy's health problems were caused by lack of care from Nurse Rochelle. *See Boring v. Kozakiewicz,* 833 F.2d 468, 473 (3d Cir.1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988). *See also Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir.1994) (prisoner's self-diagnosis does not establish that medical problems exist). Moreover, there is no allegation or evidence in the record that Lacy ever reported these conditions to Nurse Rochelle.

Assuming, for purposes of this motion, that the conditions alleged by Lacy are "serious," cf. *Henderson v. Harris,* 672 F.Supp. 1054, 1059 (N.D.Ill.1987), the record is devoid of any allegation or evidence that Nurse Rochelle acted with deliberate indifference in dealing with Lacy's medical complaints. There is no showing that Nurse Rochelle was aware of Lacy's conditions which allegedly developed subsequent to the fight or that she disregarded a known risk of serious harm to his health by failing to take reasonable measures to treat him. *See Camberos v. Branstad,* 73 F.3d 174, 177 (8th Cir.1995); *Adams v. Poag,* 61 F.3d 1537, 1547 (11th Cir.1995). Therefore, summary judgment will be granted in favor of the Defendants on Lacy's claim of constitutionally inadequate medical care.

### F. CLAIMS AGAINST DEFENDANT LUTZOW

After Lacy commenced this action, Defendant Brian Lutzow answered the

complaint, but he has not filed a motion to dismiss or for summary judgment. Nevertheless, the court will decline to exercise jurisdiction over the claims brought against Lutzow. Lutzow is a Wisconsin prisoner. He is not a government employee and there is nothing in the record to suggest that he was acting under the color of state law when he fought with the Plaintiff. Proving that a defendant is "acting under state law" is an essential element of a claim such as Lacy's which is brought pursuant to 42 U.S.C. § 1983. *See Adickes v. Kress & Company,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604–05, 26 L.Ed.2d 142 (1970); *Starnes v. Capital Cities Media, Inc.,* 39 F.3d 1394, 1396 (7th Cir. 1994). Because Lacy has failed to establish this essential element of his claims against Lutzow and because summary judgment is being granted on all claims and in favor of all parties over which this court has original jurisdiction, the court will dismiss all claims brought against Lutzow. *See* 28 U.S.C. § 1367(c)(3).

### ORDER

For the reasons explained above, the court ORDERS that the "Defendants' Motion for Summary Judgment" (filed August 15, 1995) IS GRANTED.

IT IS FURTHER ORDERED that the "Plaintiff's Cross Motion for Summary Judgment" (filed September 15, 1995) IS DENIED.

IT IS FURTHER ORDERED that the "Plaintiff's Motion for Default Judgment and Cross Motion for Summary Judgment" (filed September 15, 1995) IS DENIED.

IT IS FURTHER ORDERED that all claims against Defendant Brian Lutzow are dismissed. *See* 28 U.S.C. § 1367(c)(3).

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final judgment as a separate document. This judgment shall provide that:

This action came on for hearing before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED

that Plaintiff Johnny Lacy, Jr. take nothing and that this action brought against Defendants Gerald A. Berge, Dennis Meier, Laura Flood, Paul Pausma, Thomas Gozinske, Sergeant Kok and Nurse Rochelle is dismissed upon its merits and with prejudice and that Defendants Gerald A. Berge, Dennis Meier, Laura Flood, Paul Pausma, Thomas Gozinske, Sergeant Kok and Nurse Rochelle recover of the Plaintiff their costs of this action.

IT IS FURTHER ORDERED

that the claims brought against Defendant Brian Lutzow are dismissed.

Done and Ordered.