**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIMOTHY C. NELSON,
          *Plaintiff-Appellant,*

v.

CITY OF DAVIS; JAMES HYDE, Chief
of Police, City of Davis; JOHN
WILSON, Sergeant; THE REGENTS OF
THE UNIVERSITY OF CALIFORNIA;
JOYCE SOUZA; MICHAEL MASON,
Sergeant; BRUCE DAVIDSON,
Sergeant; FNU BATES, Sergeant;
JAVIER BARRAGAN, Officer;
BRANDON JONES, Officer; CALVIN
CHANG, Officer; M. GARCIA,
Officer; CALVIN HANDY, Chief of
Police,
          *Defendants-Appellees.*

No. 07-16905

D.C. No.
CV-05-01193-MCE

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
March 13, 2009—San Francisco, California

Filed July 7, 2009

Before: J. Clifford Wallace, Sidney R. Thomas and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Thomas

8357

**COUNSEL**

John L. Burris and Adanté D. Pointer; Law Offices of John L. Burris; Oakland, California, for the appellant.

J. Scott Smith, Douglas R. Thorn, and John A. Whitesides; Angelo, Kilday & Kilduff; Sacramento, California, for appellees City of Davis, James Hyde, and John Wilson.

Michael T. Lucey, Don Willenburg, and Mar S. Posard; Gordon & Rees, LLP; San Francisco, California, for appellees Javier Barragan, Mary Garcia, and Calivin Handy.

Kelli M. Kennaday and Kim Johnston; Wilke, Feury, Hoffelt, Gould & Birney; Sacramento, California, for appellee Calvin Chang.

**OPINION**

THOMAS, Circuit Judge:

This appeal presents the question of whether the "sham affidavit" rule precludes the introduction of testimony from other witnesses that is arguably inconsistent with a plaintiff's deposition testimony. Under the circumstances presented by this case, we conclude the doctrine does not extend that far, and we vacate the judgment of the district court and remand for reconsideration.

I

On the evening of April 16, 2004, 21-year-old University of California, Davis student Timothy Nelson attended a large party at the Sterling Apartment Complex in Davis, California. Police estimated that up to 1000 people were at the party. The party escalated out of control and approximately 30-40 city and school police officers were dispatched to the scene.

The officers formed a skirmish line and attempted to sweep the crowd toward the front of the apartment complex. The officers gave numerous dispersal orders while they moved through the crowd, and multiple officers stated that they were under a constant barrage of thrown bottles while moving through the property, and that many members of the crowd were chanting, yelling, and cursing at them.

Some officers shot pepperballs[1] at bottle-throwing students

---

[1]Pepperball launchers are similar to paintball guns in both form and function, but they launch projectiles full of the chemical irritant oleoresin capsicum ("OC") rather than paint. The pepperball launchers used at the party fire the OC projectiles at a velocity of 350 to 380 feet per second. The launchers combine the kinetic impact of the projectile with the discomfort of the OC. Training documents submitted to the district court state that suspects "can be accurately targeted up to 30 feet away with . . . enough kinetic impact to shatter the projectile and leave a welt or bruise."

and also at groups of people that did not move when told to disperse. The purpose of shooting the pepperballs was two-fold: (1) to specifically target those partygoers who were throwing bottles at the police; and (2) to create "area denial" or "area saturation" so that the OC would make it uncomfortable for any person to stay in the area.

Nelson and his group of friends eventually left the hallway in which they were standing and entered an outside breezeway. The officers allegedly warned people in the breezeway that they needed to disperse, and Sgt. John Wilson of the Davis Police Department ordered the pepperball unit to fire when he felt that the students were not dispersing properly. After receiving the order, "[a]ll of the officers lined up. The four officers lined up in a row and pointed their Pepperball units down range[, and t]hey shot into the area of the crowd." Two officers testified that no one in the breezeway was throwing bottles.

During his deposition Nelson testified regarding the period when the police started shooting:

> A.  What I can recall? We were coming out the doors and I heard shots being fired.
>
> Q.  What do you mean you heard shots being fired?
>
> A.  I heard the mace bullet of hitting of the windows and I — . . . .
>
> Q.  At the moment something impacted your eye what was the position of your body? Were you standing straight up? Were you making — were you in the process of making some kind of motion?
>
> A.  I was just walking out. That's all I remember is walking out and when I saw that, then I got hit.

Q. So you didn't make a motion to dive into the bushes before that?

A. No, it was instantaneous of the sound. The sounds and the feeling was instantaneous. It wasn't like five minutes had passed. It was, boom, right then.

Nelson also presented the deposition testimony of Bridget Collins and Alicia Vittitoe. Collins testified that she was standing outside in front of the breezeway door with a group of friends, "[i]ncluding Tim," when the police opened fire. Alicia Vittitoe testified that Nelson was standing "[w]ith the group" in front of the door in the breezeway when the police started shooting. Thus, while Nelson seemed to indicate that he was not in the breezeway before the police fired, two supporting witnesses testified that he was included in the group upon which the police fired the pepperballs, making him an intended target of the shooting.

Nelson filed his lawsuit in the Eastern District of California and made eleven separate claims for relief. He brought suit under 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments, and he brought eight claims for relief based on California state law grounds. Nelson claims that he lost his football scholarship after the injury, suffered temporary blindness and permanent disfigurement, and has undergone a number of corrective surgeries. After the conclusion of discovery, all defendants moved for summary judgment or partial summary judgment.

The district court granted the defendants' motions for summary judgment and dismissed Nelson's claims without hearing oral argument. The district court decided that Nelson was not an intended target of the pepperball unit because "[a]ny inference in that regard that may be drawn from the equivocal testimony of others, however, is nullified by Plaintiff's own clear version of what transpired during the period immedi-

ately surrounding his injury." The district court relied on *Prosser v. Ross*, 70 F.3d 1005 (8th Cir. 1995), and *Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262 (9th Cir. 1991), and found that Nelson could not "avoid summary judgment by citing testimony allegedly inconsistent with his own testimony."

We review summary judgment de novo. *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007). We "may not affirm a grant of summary judgment if there is any genuine issue of material fact . . . , [b]ecause '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). All justifiable inferences must be drawn in Nelson's favor, and we must deny summary judgment if any rational trier of fact could resolve an issue in his favor. *Id.*

## II

**[1]** "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy*, 952 F.2d at 266. Stemming from our decision in *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir. 1975), this rule bars a plaintiff from creating a factual dispute with himself for the sole purpose of arguing that summary judgment is inappropriate until the dispute is settled. " '[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' " *Id.* at 544 (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

**[2]** However, this rule has its limits. In *Kennedy*, we noted that other circuits had "urged caution in applying the rule"

and concluded "that the *Foster-Radobenko* rule does not auto-matically dispose of every case in which a contradictory affi-davit is introduced to explain portions of earlier testimony." *Id.* at 266-67. Accordingly, *Kennedy* required that "before applying the *Radobenko* sanction, the district court must make a factual determination that the contradiction was actually a 'sham.' " *Id.* at 267.

**[3]** In addition, as we have noted in subsequent cases, the "sham affidavit" rule does not preclude the non-moving party " 'from elaborating upon, explaining or clarifying prior testi-mony elicited by opposing counsel on deposition' " and that " 'minor inconsistencies that result from an honest discrep-ancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.' " *Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078, 1086 n.7 (9th Cir. 2002) (quot-ing *Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995)); *see also Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 820 (9th Cir. 2002) ( "[T]he statements in the [ ] declaration supplemented, and did not directly contradict [the] deposition statements. Accordingly, the district court erred in excluding the declaration on the ground that it contra-dicted [the] deposition testimony.") (footnote omitted).

**[4]** The differences between the evidence tendered in this case and the paradigmatic "sham affidavit" case are quite evi-dent. There is, of course, no affidavit at issue here, much less the plaintiff's own affidavit. Rather, plaintiff points to deposi-tion testimony given under oath by other percipient witnesses who had a different viewpoint from the plaintiff's and who had not suffered head injuries sufficient to cause temporary blindness.

**[5]** The rationale underlying the sham affidavit rule is that a party ought not be allowed to manufacture a bogus dispute with *himself* to defeat summary judgment. That concern does not necessarily apply when the dispute comes from the sworn deposition testimony of another witness. *See Lane v. Celotex*

*Corp.*, 782 F.2d 1526, 1531 (11th Cir. 1986) ("[W]hile a district court may find that a *party's* contradictory affidavit constitutes a sham, . . . we would be unable, absent great trepidation, to affirm a similar finding with respect to a disinterested *witness'* contradictory affidavit.") (internal citation and footnote omitted).

**[6]** The more appropriate analysis is the traditional summary judgment standard. A district court has the responsibility to construe all facts in the light most favorable to the non-moving party:

> [A]t this stage of the litigation, the judge does not weigh disputed evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are within the province of the factfinder at trial.

*Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005) (internal quotation marks omitted). Here, the district court ruled that testimony from Collins and Vittitoe was "equivocal" as compared to "Plaintiff's own clear version of what transpired." That is just the type of credibility determination that must be left to the factfinder, and not made by a judge on summary judgment. A judge must not grant summary judgment based on his determination that one set of facts is more believable than another. Collins and Vittitoe both stated that Nelson was standing with them outside in the breezeway when the officers opened fire. If the testimony is credited, a reasonable juror could find that Nelson was part of the breezeway group and therefore an intended target of the police officers. As an intended target, Nelson could attempt to distinguish the bystander cases the district court relied upon, and support his Fourth Amendment claim by proving there was "a governmental termination of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489

U.S. 593, 597 (1989). The contradictory deposition testimony was sufficient to create a genuine issue of material fact and critical to this important question.

**[7]** The defendants rely on *Prosser v. Ross*, 70 F.3d 1005 (8th Cir. 1995), and argue that we should extend the sham affidavit rule to cover all instances when evidence conflicts with the plaintiff's testimony. In *Prosser,* the court found that a plaintiff could not "avoid summary judgment by proffering testimony from another person that contradicts the plaintiff's own testimony." *Id.* at 1008. The court also found, however, that its decision was strengthened by the fact "no reasonable jury could return a verdict for Prosser based on [the witness'] testimony." *Id.* at 1009. To the extent the Eighth Circuit found that a contradictory deposition can never create an issue of fact, we must disagree with our sister circuit, and we decline to extend our sham affidavit jurisprudence to preclude the consideration of testimony from third parties that is arguably inconsistent with a party's own testimony.**²**

Because the district court's entry of summary judgment was predicated on this extension of the "sham affidavit" rule, we must vacate the judgment and remand for further proceed-

---

**²**We emphasize, however, that nothing in this opinion should be read as curbing a trial judge's existing discretion to grant summary judgment when a party fails to create a legitimate genuine issue of fact, either with her own affidavit or testimony from supporting witnesses. *See, e.g.*, *Sanders v. Brown*, 504 F.3d 903, 910 (2007) ("Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss."); *FTC v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). Nor does anything in this opinion preclude a trial judge from excluding a third party affidavit in an appropriate case, with findings supporting the conclusion that it is truly a "sham affidavit," manufactured for the purpose of avoiding summary judgment by creating a genuine issue of material fact.

ings. We need not, and do not, reach any other issue in the case, leaving those issues to be determined in the first instance by the district court on remand.

**VACATED AND REMANDED.**