105 F.3d 174
 Dorothy C. ELLIOTT, Individually and as Co-Personal
Representative of the Estate of Archie Elliott, III; Archie
Elliott, Jr., Individually and as Co-Personal Representative
of the Estate of Archie Elliott, III, Plaintiffs-Appellees,
v.
Jason LEAVITT, Police Officer for District Heights, MD,
Defendant-Appellant,
and
Prince George'S County, Maryland; David B. Mitchell, Prince
George's County Police Chief; Wayne Cheney, Police Officer;
City Of District Heights, MD; Michael Conboy, Police Chief
for District Heights, MD, Defendants.
Dorothy C. ELLIOTT, Individually and as Co-Personal
Representative of the Estate of Archie Elliott, III; Archie
Elliott, Jr., Individually and as Co-Personal Representative
of the Estate of Archie Elliott, III, Plaintiffs-Appellees,
v.
Wayne CHENEY, Police Officer, Defendant-Appellant,
and
Jason Leavitt, Police Officer for District Heights, MD;
Prince George's County, Maryland; David B. Mitchell, Prince
George's County Police Chief; City of District Heights, MD;
Michael Conboy, Police Chief for District Heights, MD, Defendants.
 Nos. 96-1150, 96-1151.
 United States Court of Appeals,
Fourth Circuit.
 Jan. 24, 1997.
 ORDER
 
 1
 A member of the Court requested a poll on whether this case should be reheard en banc. A majority of the judges in active service voted that it should not be reheard en banc.
 
 
 2
 Judges Hall, Murnaghan, Ervin, Michael, and Motz voted for rehearing en banc. Chief Judge Wilkinson, and Judges Russell, Widener, Wilkins, Niemeyer, Hamilton, Luttig, and Williams voted against rehearing en banc.
 
 
 3
 Chief Judge Wilkinson filed an opinion concurring in the denial of rehearing en banc, in which Judges Russell, Widener, Wilkins, Niemeyer, Luttig, and Williams joined. Judge Motz filed an opinion dissenting from the denial of rehearing en banc, in which Judges Hall, Murnaghan, Ervin, and Michael joined.
 
 
 4
 The suggestion for rehearing en banc is hereby denied. Entered at the direction of Chief Judge Wilkinson for the Court.
 
 
 5
 WILKINSON, Chief Judge, concurring in the denial of rehearing en banc:
 
 
 6
 So it has come to this--my dissenting colleagues would require police officers to gamble with their lives in order to avoid civil liability. It is one thing for courts to deny qualified immunity on the basis of a violation of clearly established law. It is quite another to demand as a condition of that immunity that officers actually await the bullet.
 
 
 7
 The court's opinion in this case sets forth my position, 99 F.3d 640 (4th Cir.1996), and I would respond to the call for an en banc hearing only briefly here. The dissent effectively reads Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), and Behrens v. Pelletier, --- U.S. ----, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), to abolish the right of law enforcement officers to bring interlocutory appeals within this circuit. It converts even a mere statement that a material fact is undisputed into a forbidden debate over genuineness. If the dissent's position were to prevail, the role of courts under Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), in promoting the purposes of qualified immunity on given facts will be severely stricken.
 
 
 8
 If qualified immunity does not obtain here, it will not obtain anywhere. All plaintiffs need do to receive an automatic trial is simply assert, without any evidence, that "the police are lying." The assertion that Elliott had no gun was only that--an assertion unsupported by any evidence, and I do not understand such bald assertions to substitute for material issues of fact. A skeptical look at police conduct is one thing, but the contention that the officers planted a gun on Elliott requires that courts embrace conspiracy theories of which Oliver Stone would be proud. In fact, not even appellees were so bold as to directly claim either that Elliott did not have a gun or that the gun found on him was planted by the police. Those assertions arise from insinuation embellished by imagination, and that is no replacement for material disputes of fact.
 
 
 9
 This case is not, as the dissent would have it, a contest over the officers' credibility. Faced with the potential danger of an aggressive, intoxicated suspect, officer Leavitt handcuffed Elliott and placed him in the police car. Shortly thereafter, he and officer Cheney saw Elliott pointing a gun at them at close range with his finger on the trigger. Extensive independent evidence corroborated the officers' account of events. A blue fiber was found caught on the trigger of the gun when it was retrieved from the scene of the incident. FBI laboratory analysis matched the blue fiber to those found on Elliott's blue shorts, indicating that Elliott indeed had the gun concealed on his person when he was stopped. Several months before the shooting, a motorist was involved in an altercation with Elliott where Elliott jumped on the motorist's car, smashed in a window with his foot, verbally abused the motorist, and drew his gun. The motorist signed an affidavit in which he identified the gun recovered from Elliott's body as the same weapon with which Elliott had threatened him in the prior incident. In addition, the medical report on Elliott's wounds concluded that "[t]he injuries of the right fingertips and base of the thumb" were "best explained by the deceased's having held an object at the time he sustained his injuries." This corroborates the officers' testimony that Elliott was pointing a gun.
 
 
 10
 The testimony of Leavitt's supervisor, Sergeant Brown, likewise supports Leavitt and Cheney's testimony that Elliott had the gun out when they fired at him. In his deposition, Sergeant Brown stated that immediately before the officers began firing, he heard Leavitt yell "gun, gun" and order Elliott to drop the weapon. This testimony may be discounted only if one assumes either that Leavitt spontaneously put on a masterful theatrical performance to deceive Sergeant Brown or that Sergeant Brown also participated in the "coverup." Brown also testified that the officers were standing immediately next to the passenger side of the police cruiser, where Elliott was seated, when the shooting took place.*
 
 
 11
 Critical portions of the evidence could not have been planted. The gun, for instance, had distinguishing features, a cut off barrel and white plastic grips. These are the very features which enabled the motorist to identify the weapon as Elliott's. Moreover, the officers could not have manufactured the wounds indicating that Elliott was holding a gun at the time he was shot. Together, this evidence substantiates the critical element of the officers' claim, that Elliott was pointing a gun when they shot him. Appellees' coverup theory also fails to explain the fact that the two officers reacted to the threat instantly and simultaneously, hardly the stuff of scripted conspiracy. In order to conclude that Elliott did not have a gun, one would have to ignore all this evidence and suppose that the defendant officers, Sergeant Brown, the motorist, and the medical examiner's staff were all part of an elaborate coverup. To expand the allegations that far transforms appellees' theory from the baseless to the absurd.
 
 
 12
 Even the dissent's efforts to create a case for plaintiffs falter. The fact that a suspect was intoxicated makes him no less dangerous and the fact that he was handcuffed tells us nothing about whether he was armed. The dissent's observation that the gun was unloaded does not alter the fact that Elliott had a gun, and that the officers saw the gun pointed directly at them. The officers' subjective intent in firing twenty-two bullets is simply irrelevant to the question whether the officers' behavior was objectively reasonable under Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The number of bullets fired is likewise irrelevant; if it was objectively reasonable for the officers to use deadly force, it was also objectively reasonable for the officers to continue firing until they were sure the threat to their lives had ceased.
 
 
 13
 Nothing in Johnson or Behrens sought to abolish interlocutory appeals in cases where the material facts are not in dispute. Disputed facts will exist in virtually every confrontation between citizens and law enforcement officers, but Behrens made clear that the mere existence of contested facts does not eliminate the right of officials to appeal a denial of qualified immunity. In fact, the Supreme Court stated as much in a sentence the dissent refuses to heed: "Denial of summary judgment often includes a determination that there are controverted issues of material fact, and Johnson surely does not mean that every such denial of summary judgment is nonappealable." Behrens, --- U.S. at ----, 116 S.Ct. at 842. When reviewing an interlocutory appeal pursuant to Mitchell v. Forsyth, Johnson instructs us not to second-guess a trial court on questions of "evidence sufficiency." See Johnson, --- U.S. at ----, 115 S.Ct. at 2156. Where the material facts are undisputed, however, an appellate court's determination that the defendant officers are entitled to qualified immunity does not require any reweighing of the evidence. Such a determination is a purely legal one involving only "whether or not certain given facts show[ ] a violation of 'clearly established' law." Id. at ----, 115 S.Ct. at 2155.
 
 
 14
 It is instructive to note just how pitifully little my dissenting colleagues would say suffices to vitiate qualified immunity and dismiss an appeal. Despite Johnson 's recognition that appellate review of a denial of qualified immunity will at times require a "detailed evidence-based review of the record," id. at ----, 115 S.Ct. at 2159, the dissent finds even so much as a mere reference to the evidence on defendants' side of the case to involve an impermissible reweighing. In fact, the dissent chastises the defendants' appellate brief for deigning to argue that plaintiffs' case lacked any relevant evidentiary support. The dissent's approach is thus apparent: plaintiffs need only assert some factual dispute--however irrelevant to the question of qualified immunity--to ensure themselves a trial, and defendants will not even be permitted to argue that the material facts are undisputed because, according to the dissent, merely making that argument suffices to dismiss their appeal. Consequently, neither the appellate court nor the officers themselves are so much as permitted to make reference to the record for fear of engaging in the forbidden re-evaluation of the evidence. It becomes transparent that the upshot of the dissent will be to dispense with interlocutory appeals altogether and with any meaningful concept of qualified immunity overall.
 
 
 15
 This cannot be what the Supreme Court had in mind in Johnson and Behrens. I do not understand Johnson to suddenly disavow a decision, Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), that has been a staple of that Court's jurisprudence for many years. Indeed, the Court's holding was premised on the fact that the sufficiency question before it was distinguishable from the qualified immunity issues subject to interlocutory appeal under Mitchell. Johnson, --- U.S. at ---- - ----, 115 S.Ct. at 2156-58. Behrens even more strongly reaffirmed Mitchell. The main holding in Behrens, of course, was that officials asserting qualified immunity are entitled to not one but two interlocutory appeals on the question of immunity. That case was not the action of a Court bent upon impairing immunity appeals. Instead, Behrens ' warning that appellate jurisdiction is not abolished simply because the case involves asserted factual disputes was an apparently vain attempt to preempt precisely the sort of over-reading of Johnson proposed by my dissenting colleagues. Under Behrens, we are to respect the role reserved for the trial court by Johnson, but we are not to slam the door to interlocutory appeals on the district court's mere recitation of the mantra that "a genuine issue of fact exists." If this mantra were sufficient to insulate a district court's order from appellate scrutiny, it would become boilerplate in every denial of an immunity defense. While the dissent expresses the respect that each of us has for the efforts of district judges, surely the few brief remarks on the critical issue in this case are not what the dissent desires by way of explication when a defense of qualified immunity is denied.
 
 
 16
 Other circuits have not hesitated to correct the erroneous application of immunity doctrine on the basis of given material facts. See Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir.1996) (awarding immunity and finding that Johnson allows immediate review where "the facts alleged in the record before us are not in dispute"); Cantu v. Rocha, 77 F.3d 795, 803 (5th Cir.1996) (awarding immunity and finding that Johnson allows immediate review where "[i]n contrast to Johnson, there is no significant fact-related dispute about [defendants'] actions"); Prosser v. Ross, 70 F.3d 1005, 1006-07 (8th Cir.1995) (awarding immunity and finding that Johnson allows immediate review where "the facts required to determine whether [the defendant] is entitled to qualified immunity are not genuinely in dispute"); Lennon v. Miller, 66 F.3d 416, 422 (2d Cir.1995) (awarding immunity and finding that Johnson allows immediate review where an appeal "poses only a legal question about the objective reasonableness of the defendants' action under undisputed facts"). These circuit decisions all followed Johnson. All of these cases involved interlocutory appeals, and all of them resulted in reversal of a district court's denial of qualified immunity.
 
 
 17
 It is regrettable to have to belabor basic maxims here, but it is necessary to do so because the dissent pays them so little respect. Because the societal costs of lawsuits against public officers stem as much from the trial of such suits as from actual judgments, the Supreme Court has emphasized that qualified immunity "is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815. This point has been repeated many, many times. See Behrens, --- U.S. at ----, 116 S.Ct. at 838; Swint v. Chambers County Commission, 514 U.S. 35, ----, 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995); Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, ----, 114 S.Ct. 1992, 1997, 128 L.Ed.2d 842 (1994); Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991); Siegert v. Gilley, 500 U.S. 226, 232-33, 111 S.Ct. 1789, 1793-94, 114 L.Ed.2d 277 (1991); Van Cauwenberghe v. Biard, 486 U.S. 517, 521, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988). Indeed, the Supreme Court has stated in countless qualified immunity cases that "insubstantial claims should not proceed to trial." Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982); accord Behrens, --- U.S. at ----, 116 S.Ct. at 838; Hunter, 502 U.S. at 227, 112 S.Ct. at 536; Burns v. Reed, 500 U.S. 478, 494 n. 8, 111 S.Ct. 1934, 1944 n. 8, 114 L.Ed.2d 547 (1991); Anderson v. Creighton, 483 U.S. 635, 640 n. 2, 107 S.Ct. 3034, 3039 n. 2, 97 L.Ed.2d 523 (1987); Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815-16; Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019-20, 82 L.Ed.2d 139 (1984); Butz v. Economou, 438 U.S. 478, 507-08, 98 S.Ct. 2894, 2911-12, 57 L.Ed.2d 895 (1978). The right to avoid trial is partly assured by the objective reasonableness standard of Harlow and partly by interlocutory appeals under Mitchell. In the face of this long, unbroken line of precedent stressing the need to protect officials from a stream of trials from baseless lawsuits, it defies belief that the Supreme Court walked silently and unobtrusively away from interlocutory appeals in the Johnson decision.
 
 
 18
 In the instant case, every shred of relevant evidence--the FBI laboratory analysis of the fiber, the medical examination of Elliott's wounds, the distinctive characteristics of Elliott's gun, the affidavit of the threatened motorist, and the observations of Leavitt's supervisor--demonstrates that the officers were confronted with an intoxicated man threatening them point blank with a gun. What would the dissent have the officers do--stand still and be shot?
 
 
 19
 The dissent makes a show of following precedent even as it ignores the teachings of Mitchell, Harlow, and their progeny, and the lessons of Graham v. Connor and Tennessee v. Garner, supra, on the objectively reasonable use of force. Under the dissent's view, no officer will ever be secure using force in self-defense no matter how obvious, immediate, or extreme the danger faced. Indeed, the dissent would make the moment of greatest personal danger for the officer the moment of greatest hesitation. As we sit in comfort in our chambers, we should pause to ponder what the dissenters have decreed for the streets: a rule that would question every action, second-guess every judgment, and scrutinize every move made by a policeman in an instant of personal peril. It is no violation of clearly established law for an officer to act to save his own life. I should have thought that the Court in Garner /Graham made one thing clear--that those in robes should not strip those in uniform even of the right to self protection.
 
 
 20
 Judge DONALD S. RUSSELL, Judge WIDENER, Judge WILKINS, Judge NIEMEYER, Judge LUTTIG, and Judge WILLIAMS join in this opinion.
 
 
 21
 DIANA GRIBBON MOTZ, Circuit Judge, dissenting from denial of rehearing en banc:
 
 
 22
 Because the issue presented here is an important one that will frequently confront us and because the panel's resolution of this issue is contrary to recent and controlling Supreme Court precedent, I respectfully dissent from the court's refusal to rehear this case en banc. Under the principles set forth in Johnson v. Jones, --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), and reiterated just last term in Behrens v. Pelletier, --- U.S. ----, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), the instant case is not immediately appealable.
 
 
 23
 Today my colleagues in the majority ignore Johnson 's holding that "a defendant ... may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial," Johnson, --- U.S. at ----, 115 S.Ct. at 2159, and allow a panel to trade its determination of evidentiary sufficiency for the district court's. All of the rhetoric in the concurrence cannot obscure the panel's decision to replace the district court's finding that "the evidence could support a finding that particular conduct occurred," Behrens, --- U.S. at ----, 116 S.Ct. at 842, with the conclusion of the panel and concurrence that "every shred of relevant evidence" supports the opposite conclusion. Even if the panel and concurrence were right on the facts (which they are not), they cannot replace the district court's "determination[ ] of evidentiary sufficiency" with their own under Behrens and Johnson. Behrens, --- U.S. at ----, 116 S.Ct. at 842.
 
 I.
 
 24
 On June 18, 1995, Officer Jason Leavitt stopped twenty-four year old Archie Elliott III, a drunken motorist. Archie complied with the officer's request for his driver's license and registration, stating he just wanted to go home. After Officer Leavitt called for backup, he administered several sobriety tests, which Archie failed. Then the officer handcuffed Archie's hands behind his back and searched him; Archie was only wearing shorts and sneakers (no shirt or socks). Finding no weapon or other contraband, Officer Leavitt, with the help of Officer Wayne Cheney who had just arrived on the scene, seatbelted Archie in a police cruiser, with the doors locked and windows rolled up. The officers left no weapons in the cruiser.
 
 
 25
 Leavitt and Cheney testified that minutes later they looked into the cruiser and saw Archie had twisted his arms (which were still handcuffed) to the right side of his body, released the seat belt, and had a small gun in his hands pointed at the officers. Officer Cheney yelled "Gun!" and ordered Archie to drop the gun. After a few seconds, when Archie did not respond, both Cheney and Leavitt fired multiple rounds at Archie, killing him. In all, Cheney and Leavitt fired 22 bullets at Archie; ten bullets remained in their weapons. After the shooting, Cheney opened the car door, retrieved a small gun from Archie's hands, and placed it on the trunk of the cruiser; Archie was still handcuffed.
 
 
 26
 The above account is entirely based on the deposition testimony of Cheney and Leavitt. Officer Leavitt's supervisor, Sergeant Brown, who arrived at the scene shortly before the killing, testified that he never saw Archie with a gun:
 
 
 27
 Q. When Officer Leavitt yelled drop it, drop it, was he directing his comments towards the suspect in the police vehicle?
 
 
 28
 A. Yes, he was.
 
 
 29
 Q. Did you observe any or could you observe from where you were standing any activity on the part of the suspect in the vehicle?
 
 
 30
 A. No, I could not.
 
 
 31
 Sergeant Brown also testified he never saw the place from which Officer Cheney retrieved the small gun:
 
 
 32
 Q. Could you see from what part of the suspect person Officer Cheney retrieved the gun?
 
 
 33
 A. No.
 
 
 34
 Q. Why is that?
 
 
 35
 A. Officer Cheney was directly in front of me.
 
 
 36
 Q. So you have no knowledge as to where the gun was retrieved?
 
 A. That's correct.[1]
 
 37
 The only other party in a position to know if Archie had a gun, Archie himself, of course, could not dispute the officers' account.
 
 
 38
 During the ensuing investigation, it was learned that there was a fiber on the small gun that matched Archie's shorts, that the gun was unloaded, that the gun had never been fingerprinted, that a medical examiner believed that the injury in Archie's right hand could best be "explained by the deceased having held an object at the time that he sustained his injuries," that an excessive force complaint had previously been lodged against Officer Leavitt, and that fifteen months after the shooting, a witness gave a statement to police officers that, five months before the shooting, Archie had threatened him with the same small gun.
 
 
 39
 Archie's parents, Dorothy Elliott and Archie Elliott, Jr., sued Officers Leavitt and Cheney, alleging that Archie had had no gun, and that the officers had planted the gun after they had killed Archie. The officers asserted qualified immunity and moved for summary judgment. If Archie had a gun, circuit precedent entitles the officers to qualified immunity; but if Archie had no gun, not even the officers claim they would be entitled to qualified immunity. Thus, if the defendant officers' version of the facts is accepted, the Elliotts have not alleged a violation of clearly established law, but if the Elliotts' version is accepted, they obviously have alleged such a violation. The only issue is whether the Elliotts have produced sufficient evidence that could support a finding that events took place as they allege, e.g., Archie had no gun. Or put differently, have the Elliotts produced sufficient evidence to demonstrate a dispute as to a material fact--whether Archie had a gun.
 
 
 40
 The district court concluded that the plaintiffs, Mr. and Mrs. Elliott, had indeed produced sufficient evidence to demonstrate a dispute as to a material fact and, for this reason, refused to grant the officers summary judgment.
 
 II.
 
 41
 Whether or not we agree with the district court, its holding is not immediately appealable. Generally, a federal appellate court only has jurisdiction to consider final decisions. 28 U.S.C. § 1291 (1994).
 
 
 42
 Under Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949), some interlocutory, non-injunctive orders are appealable, but only if they constitute "collateral" orders.
 
 
 43
 In Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court explained that "a district court's order denying a defendant's motion for summary judgment was an immediately appealable 'collateral order' ... under Cohen where (1) the defendant was a public official asserting a defense of 'qualified immunity,' and (2) the issue appealed concerned ... whether or not certain given facts showed a violation of 'clearly established' law." Johnson v. Jones, --- U.S. ----, ----, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238 (1995) (citing Mitchell, 472 U.S. at 528, 105 S.Ct. at 2816-17). Two years ago, in Johnson v. Jones, a unanimous Supreme Court clarified that "the exception to the general rule that interlocutory orders are not immediately appealable--fashioned in Mitchell--for orders denying officials qualified immunity prior to trial, did not extend to such orders when they 'resolved a fact-related dispute.' " Buonocore v. Harris, 65 F.3d 347, 360 (4th Cir.1995) (emphasis in original) (quoting Johnson, --- U.S. at ----, 115 S.Ct. at 2153). In sum, Johnson "unequivocally holds that an order denying summary judgment on qualified immunity grounds insofar as it determines whether 'the pretrial record sets forth a genuine issue of fact' is not immediately appealable." Id. at 361 (quoting Johnson, --- U.S. at ----, 115 S.Ct. at 2159).
 
 
 44
 Earlier this year in Behrens v. Pelletier, --- U.S. ----, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), the Supreme Court reiterated that principle. The respondent in that case had asserted that an immediate appeal of the denial of the summary judgment motion was not available because "material issues of fact remain." Behrens, --- U.S. at ----, 116 S.Ct. at 842. The Supreme Court rejected that argument, noting that Johnson does not mean that "every such denial of summary judgment is nonappealable." Id. Rather, "summary judgment determinations are immediately appealable when they resolve a dispute concerning an 'abstract issue of law' relating to qualified immunity...." Id. (quoting Johnson, --- U.S. at ----, 115 S.Ct. at 2158). However, the Behrens Court was quite clear in reaffirming Johnson's holding that:
 
 
 45
 [D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is no "final decision" under Cohen and Mitchell.
 
 
 46
 Id. (quoting Johnson, --- U.S. at ---- - ----, 115 S.Ct. at 2156-57).
 
 
 47
 The panel opinion states this principle and purports to find that the case at hand is immediately appealable under Behrens because "it does not involve whether 'particular conduct occurred.' " Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir.1996) (quoting Behrens, --- U.S. at ----, 116 S.Ct. at 842). If that assessment were accurate, I would agree that this case would be immediately appealable; but that assessment simply does not square with the district court's holding. The district court denied summary judgment because it believed there was:
 
 
 48
 [A] significant issue of credibility....[U]nder these circumstances there are enough circumstances that a judge making this as a preliminary call could say that a reasonable trier of fact could come to a conclusion that things simply did not happen as the officers say they did. And under those circumstances I don't think that I am able at this point to grant summary judgment on the grounds of the nonexistence of a genuine issue of material fact. There are significant issues of material fact that are present in this case, given the unusual circumstances of the way it occurred.
 
 
 49
 The district court further explained that Archie was "dressed in such a way as [he was] not likely to have a weapon" and was "searched by an officer, who one would think if he's presumed to have acted regularly, might have found the weapon and did not."
 
 
 50
 In short, the district court held that there was a question of whether "particular conduct occurred," i.e., the court held that there was sufficient evidence to support the Elliotts' version of the story and deny summary judgment. This decision is precisely the type that Behrens and Johnson conclude is not an immediately appealable, final decision. Behrens and Johnson direct that an appellate court cannot hear appeals of district court decisions which involve a finding that particular conduct occurred, or might have occurred, unless the appellate court can "take, as given, the facts that the district court assumed" and rule as a matter of law. Johnson, --- U.S. at ----, 115 S.Ct. at 2159. See also Behrens, --- U.S. at ----, 116 S.Ct. at 842. In this case the panel simply disagrees with the district court's reading of the facts, and impermissibly replaces its reading of the evidence for the district court's.
 
 
 51
 An examination of the panel opinion itself demonstrates this error. The panel does not apply a purely legal analysis, which Behrens and Johnson require on immediate appeal, but rather engages in impermissibly reweighing the evidence, which Johnson and Behrens reserve to the district court. For example, the panel dismisses "[t]he district court's concern that the number of shots fired was excessive," concluding that this concern was "misplaced" because the firing of twenty-two shots at a concededly drunk and handcuffed, but allegedly armed, man does "not suggest the officers shot mindlessly as much as it indicates that they sought to ensure the elimination of a deadly threat." Elliott, 99 F.3d at 643. The panel thus replaces the district court's assessment of the facts with its own.
 
 
 52
 Similarly, the panel substitutes its reading of the record on the key issue in the case--whether Archie, who had been searched by the police and was dressed only in sneakers and shorts had a gun--for that of the district court. Compare the panel's conclusion that "the officers' claim that [Archie] Elliott was holding a gun when they shot him is corroborated by substantial evidence," Elliott, 99 F.3d at 644, with the district court's conclusion that the officers' version was "on [its] face improbable enough--not to say untrue--but improbable enough that they do raise issues of fact that a reasonable trier of fact could differ on." It is simply impermissible under Johnson and Behrens for an appellate court on an interlocutory appeal from a denial of summary judgment to reweigh a district court's reading of the sufficiency of the evidence. See Behrens, --- U.S. at ----, 116 S.Ct. at 842 ("[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case.").
 
 
 53
 Perhaps the clearest indication that the only issue appealed here is evidentiary sufficiency is the defendant officers' appellate brief. There, they repeatedly assert precisely the sort of "insufficiency of the evidence" arguments that Johnson and Behrens hold are not appealable. See, e.g., Brief of Appellants at 21 ("Plaintiffs at bar offered no evidence, direct or circumstantial, to controvert the testimony of Officers Leavitt and Cheney."); id. at 22 ("Plaintiffs at bar pointed to no evidence ...."); id. at 23 and 24 ("Plaintiffs offered no evidence whatsoever ...."); id. at 26 and 27 ("No evidence was demonstrated ...."); id. at 27 ("Plaintiffs"'dispute' over what the officers observed is also without evidentiary support ...."); id. at 28 (Plaintiffs "offer no evidence to support an inference that he did not have a weapon."); id. at 29 ("Plaintiffs do not offer any evidence, direct or circumstantial, to suggest that Officers Leavitt and Cheney had any reason to fabricate their testimony."); id. at 32 ("[T]here is no evidence of any pause in the firing ...."); id. ("Plaintiffs have failed to demonstrate evidence of a constitutional violation."); id. at 33 ("There are no facts to support the district court's finding."). Of course, who can blame the defendants for making these forbidden arguments--they were successful before the panel.
 
 
 54
 It is also worth noting that in reassessing every nook and cranny of the record below the panel fails to comply with Johnson 's requirement that an appellate court "take, as given, the facts that the district court assumed when it denied summary judgment." Johnson, --- U.S. at ----, 115 S.Ct. at 2159. The concurrence does quote Johnson 's statement that a "detailed evidence-based review of the record" will sometimes be necessary but, like the panel, ignores the Johnson 's admonition that this sort of "cumbersome review of the record" is only appropriate when a district court has "den[ied] summary judgment without indicating their reasons for doing so." Id. When denying summary judgment here the district court fully stated both its "reasons for doing so" and the facts supporting its reasoning.
 
 
 55
 Lastly, the panel opinion cannot be justified by the claim that the district court's holding was "unsupported by any evidence." Even if the panel could properly replace a district court's sufficiency of the evidence determination with its own, there certainly was evidence in this case that Archie did not have a gun. Officer Leavitt himself testified that he searched Archie--who was clothed only in shorts and tennis shoes--and did not find one. Archie was drunk, with his hands cuffed behind his back. The gun he assertedly planned to use was unloaded. These are significant handicaps if his goal was to shoot both officers and escape. There was also evidence that an excessive force complaint had previously been lodged against Officer Leavitt. Finally, although the panel relied on the restraint the officers exhibited in forgoing the use of ten available bullets, a jury could infer that the firing of twenty-two bullets at a handcuffed man evinces a motive other than self-defense. The very implausibility of the incident happening as claimed by the officers could support an inference that the plaintiffs' version of the events was true. The jury wouldn't have to, and perhaps shouldn't, find for the Elliotts on any of these inferences, but it could.[2]III.
 
 
 56
 Before concluding I must respond to some remarks in the concurrence. The first is the concurrence's suggestion that precedent from our sister circuits somehow supports the panel opinion. This is simply not so. Out-of-circuit cases, including the cases cited by the concurrence, offer no support for the extraordinary panel opinion.
 
 
 57
 In none of the cases relied on by the concurrence did an appellate court overrule a district court's stated factual basis for determining that particular conduct alleged by the plaintiff might have occurred. Indeed, each of the cases cited by the concurrence recognize that "[o]rders that resolve a fact-related dispute of 'evidence sufficiency,' i.e. which facts a party may, or may not, be able to prove at trial ... are not immediately appealable and must await final judgment." Cantu v. Rocha, 77 F.3d 795, 802 (5th Cir.1996) (some quotation marks omitted); Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir.1996) ("Because the issue appealed here concerns not which facts the parties may be able to prove but whether certain given facts show a violation of clearly established law, we conclude that we have jurisdiction."); Prosser v. Ross, 70 F.3d 1005, 1006 (8th Cir.1995) (Mitchell appeals are limited to "abstract issues of law."); Lennon v. Miller, 66 F.3d 416, 422 (2d Cir.1995) ("Thus, where a court's denial of summary judgment is based on a determination that certain factual findings are essential to resolving the qualified immunity question, the denial is not reviewable....").
 
 
 58
 In fact, contrary to the suggestion of the concurrence, our sister circuits have uniformly followed the Behrens-Johnson rule, just as I would, and have held that an appellate court cannot review a district court's evidentiary sufficiency decision. Thus, in every case in which a district court has set forth the issues of fact that prevented it from granting a defendant summary judgment on qualified immunity grounds, our sister circuits have held they lacked jurisdiction and so dismissed the appeal. See, e.g., Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996) ("The [defendants] further argue that [the plaintiff] failed to show a genuine issue of material fact.... As to that question we lack jurisdiction."); Shinault v. Cleveland County Bd. of County Comm'rs., 82 F.3d 367, 370 (10th Cir.1996) ("The scope of [Mitchell ] appeals, however, is limited to 'purely legal' challenges to the district court's ruling.... We lack jurisdiction over [this] appeal."); Woolfolk v. Smith, 81 F.3d 741, 743 (8th Cir.1996) (finding no jurisdiction in a case of an officer shooting a suspect because "this is the type of fact-based qualified immunity decision that is not appropriate for interlocutory appeal"); Rambo v. Daley, 68 F.3d 203, 207 (7th Cir.1995) ("The essential dispute, therefore, concerns whether the plaintiff's version of the facts is true.... [T]he Mitchell exception does not allow us to hear [factual] disputes...."); Tamez v. City of San Marcos, 62 F.3d 123, 125 (5th Cir.1995) (Because the lower court found "that genuine issues of material fact exist[ed] which preclude[d] summary judgment....[W]e lack jurisdiction over [this] interlocutory appeal."); see also Stella v. Kelley, 63 F.3d 71, 75 (1st Cir.1995) ("[W]e lack the power to inquire into, or address ... the fact-based question of what the evidence does (or does not) show concerning whether the [defendant's] actions violated the asserted right.").
 
 
 59
 In sum, rather than being consistent with out-of-circuit precedent, the panel opinion is distinctly out of sync. Indeed, the panel opinion appears to be the only circuit court opinion that has simply refused to follow the rule clearly enunciated in Behrens and Johnson.
 
 
 60
 The concurrence also mischaracterizes my views in several crucial respects. Neither I, nor any proper application of Johnson and Behrens, would allow "plaintiffs [to] assert some factual dispute--however irrelevant to the question of qualified immunity--to ensure themselves of a trial." Indeed, the factual disputes asserted by a plaintiff on appeal are meaningless under Johnson and Behrens. What matters is the district court's assessment of the facts. Rather than offering "an automatic trial" to plaintiffs who assert that "the police are lying," I simply follow the Supreme Court's mandate: when a district court denies summary judgment because of a purely factual question that decision is not immediately appealable.
 
 
 61
 This mischaracterization of my views by the concurrence demonstrates a fundamental flaw in its approach, it utterly disregards the critical role of district courts. It is the district court's job to assess the facts at summary judgment. The concurrence's suggestion that to follow Behrens and Johnson, as I do, would allow plaintiffs to make wild-eyed assertions that appellate courts would rubber-stamp on to trial ignores the fact that district courts must, and do, weed out almost all baseless claims. Although a district court may occasionally find disputes as to material fact that the concurrence does not fancy, the Supreme Court has made clear that an appellate court lacks jurisdiction to overturn such a decision; it is the district court's job to assess the sufficiency of evidence at summary judgment.
 
 
 62
 Finally, I must briefly respond to the charge of my colleagues joining in the concurrence that I would "require police officers to gamble with their lives in order to avoid civil liability" or "stand still and be shot." That rhetoric and the entire tenor of the opinion concurring in the denial of rehearing en banc unfairly and fundamentally mischaracterizes the basis for my dissent. I dissent not because I am unsympathetic to the frequently difficult choices police officers are called upon to make or because I want to deny them qualified immunity and force them to trial. Rather, I dissent because Supreme Court precedent requires it. The Court has directed that when, as here, the only matter at issue is "whether the evidence could support a finding that particular conduct occurred" a district court's decision denying qualified immunity is not immediately appealable. Behrens, --- U.S. at ----, 116 S.Ct. at 842. Obeying the Supreme Court, as we are in any event bound to do, would neither require police officers to place their lives in peril, nor even necessarily require them to go to trial. All that it would do is eliminate an immediate appeal from a district court's denial of summary judgment on evidentiary sufficiency grounds.
 
 
 63
 Officers Leavitt and Cheney may ultimately be held entitled to immunity. The district court may even have erred in denying them immunity at this juncture. But, unquestionably the basis for the district court's denial was its assessment that "the evidence could support a finding that particular conduct [Archie had no gun] occurred." Id. Equally clearly, the basis for the majority's decision to reverse is its assessment that the same evidence could not "support a finding" that this "particular conduct occurred." Id. Behrens and Johnson forbid an appellate court from making this reassessment on interlocutory appeal.
 
 
 64
 Fundamental to our existence as a free and democratic society is the principle that we are a nation in which no person--even a courageous police officer in the line of fire or a sympathetic appellate judge--is greater than the law. The Supreme Court has proclaimed the law here. We must follow it. When a panel refuses to do this and the case presents an important and reoccurring issue, as this case does, the en banc court should reconsider the case. I respectfully dissent from the refusal of the majority of the court to do so.
 
 
 65
 Judge K.K. HALL, Judge MURNAGHAN, Judge ERVIN, and Judge MICHAEL join in this dissent.
 
 
 
 *
 In contrast, the dissent's extensive quotation of Sergeant Brown's testimony is beside the point. Sergeant Brown never testified that Elliott did not have a gun, clearly stating at his deposition that he saw Elliott's weapon:
 
 
 Q
 Did you see the gun?
 
 
 A
 Yes, I did
 
 
 Q
 What type of gun was it?
 
 
 A
 It appeared to be a small caliber handgun maybe 22 or 25 caliber revolver
 
 
 Q
 Now, do you have any reason to believe that that gun was not on the person of the suspect at the time of the shooting?
 
 
 A
 No, I do not
 The testimony quoted by the dissent indicates only that Sergeant Brown was not in position to see the weapon at the precise moment of the shooting.
 
 
 [1]
 Sergeant Brown testified he saw the small gun after the officers shot Archie; contrary to the suggestion of the concurrence, Sergeant Brown never testified to seeing the small gun at all before the officers shot Archie
 
 
 [2]
 This discussion of the facts is included only in response to the extensive invocation of the facts in the panel opinion and concurrence. Obviously, if an appellate court may not consider "determinations of evidentiary sufficiency," Behrens, --- U.S. at ----, 116 S.Ct. at 842, or "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial," Johnson, --- U.S. at ----, 115 S.Ct. at 2159, what an appellate court thinks of the sufficiency of the evidence on appeal is irrelevant. That the panel and concurrence repeatedly detail the evidence assertedly supporting their position simply demonstrates that they are indeed doing precisely what the Supreme Court has prohibited--reassessing the evidence on this interlocutory appeal