Reversed by published opinion. Judge WILKINS wrote the majority opinion, in which Chief Judge WILKINSON and Judges RUSSELL, WIDENER, NIEMEYER, HAMILTON, LUTTIG, WILLIAMS, and MOTZ joined. Chief Judge WILKINSON wrote a concurring opinion, in which Judges RUSSELL, WIDENER, and HAMILTON joined. Judge MOTZ wrote a concurring opinion. Senior Judge PHILLIPS wrote a dissenting opinion, in which Judges HALL, MURNAGHAN, ERVIN, and MICHAEL joined.
OPINION
WILKINS, Circuit Judge:
Rodney Winfield, an inmate at a Virginia state correctional facility, brought this action pursuant to 42 U.S.C.A. § 1983 (West 1994), alleging that prison officials violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments by failing to protect him from another inmate, T. Gibson, who attacked Winfield with a metal shank. Specifically, Winfield claimed that the prison officials exhibited deliberate indifference to his safety by failing to restrain Gibson prior to the attack and by declining to intervene after the attack began. Appellants—Warden *527 G.L. Bass and Correctional Officers Kelvin Carlyle, Anthony Clatterbuek, James Hicks, Galvin Sizemore, Ronald Williams, and Donald Wilmouth—appeal the denial by the district court of their claim that they are entitled to summary judgment on the basis of qualified immunity. Because we conclude that the district court erred in refusing to grant summary judgment in favor of Appellants, we reverse.
I.
The evidence presented by Appellants in support of their motion for summary judgment set forth the following facts. Winfield and Gibson were confined at the Greensville Correctional Center. Late on the evening of February 3, 1993, Winfield, Gibson, and a third inmate were conversing in a cell when a dispute developed between Winfield and Gibson. A scuffle ensued that spilled out of the cell and onto the second-floor tier of the prison. Responding to this disturbance, at least six officers proceeded to the second floor. The fray had ended by the time they arrived, however, because the inmates immediately dispersed when they saw the officers advancing. When the supervising officer, Lt. Hicks, directed that Gibson be removed from the tier, the other prisoners protested, insisting that Gibson had done nothing wrong. Fearing that an attempt to move Gibson under these circumstances might result in a major disturbance, Lt. Hicks ordered all except two of the officers to withdraw from the tier to prevent the confrontation from escalating. Only Officers Williams and Walker remained outside Gibson’s cell; neither officer was armed.
At this point, events began to unfold swiftly. Gibson suddenly and without warning emerged from his cell wielding a homemade knife, striking Officer Williams in the face with his fist, knocking him back against the second-tier railing. Gibson then bolted into Winfield’s cell three doors away. Officer Walker immediately radioed for assistance. After Officer Clatterbuek, who was now on the first floor, observed Gibson running from his cell; he instantly yelled out a warning that Gibson had a knife. Officer Clatterbuek and the other correctional officers present then hurried to the nearby control-booth to obtain batons and returned to the second tier.
In the meantime, once inside Winfield’s cell, Gibson began swinging the shank, striking Winfield. Before the prison staff responded, another inmate, John Scott, entered Winfield’s cell and, although stabbed by Gibson, was able to wrestle the shank away from him. The entire incident happened very quickly; only ten seconds were estimated to have elapsed between the assault on Officer Williams and Scott’s successful effort to disarm Gibson. Order was restored, and Warden Bass was advised of the disturbance.
In response to the prison officials’ motion for summary judgment, Winfield presented his affidavit and documentation from his inmate grievance proceedings. These materials did not take issue with the substance of the factual assertions set forth in the prison officials’ affidavits. They, however, did provide three additional allegations concerning these events that had not been included in the officers’ submission and that, for purposes of summary judgment, should be taken as true.
First, Winfield asserted that approximately one hour before the attack, Gibson, Win-field, and two other inmates had been drinking homemade wine. Moreover, he maintained that Lt. Sizemore and Officer Clatterbuek observed this behavior during their rounds. Gibson had a brief conversation with these officers at that time and apparently convinced them not to confiscate the wine.
Second, Winfield contended that when the inmates dispersed following his initial altercation with Gibson, he returned to his cell and pressed a buzzer that sent an electronic signal to a central location to indicate that he wished to have the door to his cell closed and locked. Despite several attempts by Win-field to have the door secured, the officers controlling the mechanism did not respond.
Third, and most importantly for our purposes, Winfield claimed that in order to enter the cell to extricate the shank from Gibson, Scott found it necessary to push past two officers who stood looking on throughout the *528 attack. Further, Winfield asserted that neither of the officers attempted to provide assistance to Scott while he struggled with Gibson for the shank.
Based on this record, the district court denied the prison officials’ motion for summary judgment. With respect to their claim that there were no genuine issues of material fact necessitating a trial and that they were entitled to judgment as a matter of law, the district court reasoned:
After reviewing defendants’ summary judgment motion and plaintiffs brief and affidavit opposing the motion, the Court finds that there are genuine issues of material fact in this case. Indeed, the Court finds that this case is peculiarly fact-specific and should thus proceed to trial on the merits.
J.A. 80. Turning to Appellants’ argument that they were entitled to qualified immunity, the district court opined:
It is axiomatic that individuals incarcerated in correctional facilities are entitled to be kept secure, and that this right is protected by the Eighth Amendment, the Due Process Clause of the Fifth Amendment, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Moreover, this fundamental right to security certainly was “clearly established” at the time of the assault on plaintiff. Furthermore, where it appears from the factual allegations that prison inmates are allowed liberal access to alcoholic beverages and dangerous weapons, corrections officers are bound to know that the safety of other inmates is at risk_ Thus, reasonable people in defendants’ position[s] would have known that their permissive attitude[s] toward[ ] spirits and shanks would violate the inmates’ right to continued safety and security. Accordingly, the Court rejects defendants’ qualified immunity defense.
J.A. 81-82.
The prison officials filed an appeal from the portion of this decision denying their motion for summary judgment based on qualified immunity. In addition, the district court certified for immediate interlocutory appeal the remainder of its summary judgment decision. See 28 U.S.C.A. § 1292(b) (West 1993). And, this court subsequently entered an order permitting the permissive interlocutory appeal.
While the appeals were pending, the Supreme Court decided Johnson v. Jones, — U.S. —, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), addressing the jurisdiction of a federal appellate court to entertain an immediate appeal from a refusal of a district court to grant summary judgment based upon qualified immunity. Thereafter, relying on Johnson, a panel of this court issued an opinion concluding that we lacked jurisdiction over the appeal from the decision of the district court denying qualified immunity to Appellants and that permission for the interlocutory appeal of the remainder of the summary judgment order was granted improvidently. Winfield v. Bass, 67 F.3d 529 (4th Cir.1995). A majority of the court subsequently voted to hear these appeals en banc. Winfield v. Bass, 67 F.3d 529 (4th Cir.1996).
We first address our jurisdiction to entertain appeal number 94-7346, which challenges the decision of the district court denying Appellants’ claim that they are entitled to qualified immunity. And, concluding that we possess jurisdiction to do so, we turn to consider whether the prison officials were entitled to qualified immunity. Because our determination that the district court erred in refusing to grant summary judgment to Appellants on the basis of qualified immunity is dispositive of the questions presented to us, we need not address appeal number 95-6422.
II.
Federal courts of appeals are granted jurisdiction to hear final decisions of district courts pursuant to 28 U.S.C.A § 1291 (West 1993). To the extent -that an order of a district court rejecting a governmental official’s qualified immunity defense turns on a question of law, it is a final decision within the meaning of § 1291 under the collateral order doctrine recognized in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and therefore is subject to immediate appeal. See Behrens v. Pelletier, — U.S. —, —, 116 *529 S.Ct. 834, 836, 133 L.Ed.2d 773 (1996); Johnson, — U.S. at —, 115 S.Ct. at 2155-56; Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 2814-18, 86 L.Ed.2d 411 (1985).
Prior to the decision of the Supreme Court in Johnson, this court had ruled that it was appropriate for a court of appeals to review a district court order rejecting a defense of qualified immunity on either of two conceptually distinct bases. Turner v. Dammon, 848 F.2d 440, 443-44 (4th Cir.1988). We permitted officials who were denied summary judgment on the basis of qualified immunity to argue that the district court had erroneously refused to enter judgment in their favor because the evidence presented was insufficient to create a triable issue of fact or because the right that the governmental official had purportedly violated was not clearly established. Id. The Johnson Court, however, rejected our prior practice. See Johnson, — U.S. at —, 115 S.Ct. at 2154-59. Although the Court reiterated the position that the courts of appeals possess jurisdiction to consider appeals from decisions rejecting a proffered qualified immunity defense to the extent that the district court ruled that the legal right the official purportedly violated was clearly established at the time the action was taken, it held that to the extent that the order of the district court rested upon a determination that the evidence presented was sufficient to raise a genuine issue of material fact necessitating trial, the order is not a final one from which an immediate appeal may be taken. Id.
An articulation of this distinction is rather straightforward, but an application of it may prove to be more difficult. See Woolfolk v. Smith, 81 F.3d 741, 743 (8th Cir.1996) (per curiam). The Supreme Court directed that in determining our jurisdiction in this area, we should consider the order entered by the district court to assess the basis for its decision. See Johnson, — U.S. at —, 115 S.Ct. at 2159. As the Court recognized, however, a district court does not invariably provide a clear basis for its decisions or set forth fully the facts on which its resolution is grounded. See id. And, even in those circumstances in which a district court does supply both, difficulty in assessing the threshold jurisdictional issue will remain because the determination of whether the law was clearly established at the requisite level of particularity is an especially fact-bound legal inquiry. See Prosser v. Ross, 70 F.3d 1005, 1006 (8th Cir.1995); Reece v. Groose, 60 F.3d 487, 490 (8th Cir.1995). Moreover, all denials of summary judgment, by definition, involve a determination that the evidence is disputed sufficiently to raise a genuine issue of material fact for trial. See Behrens, — U.S. at —, 116 S.Ct. at 842; Fed.R.Civ.P. 56. And, inherent in every determination that a governmental official is not entitled to qualified immunity is the legal determination that viewed in the light most favorable to the nonmoving party, the official’s conduct violated a clearly established constitutional or statutory right. See Anderson v. Creighton, 483 U.S. 635, 638-41, 107 S.Ct. 3034, 3038-40, 97 L.Ed.2d 523 (1987). Accordingly, each decision of a district court denying a governmental official’s request for summary judgment based upon qualified immunity will encompass a determination that the facts are sufficiently controverted to warrant a trial and that the legal right purportedly violated was clearly established. Obviously, if a determination by a district court that genuine issues of material fact warrant trial were sufficient to prevent us from exercising jurisdiction over an appeal from an order rejecting a qualified immunity defense, we would never have jurisdiction over such appeals—a result plainly at odds with Mitchell and its progeny. See Behrens, — U.S. at —, 116 S.Ct. at 842.
Consequently, we conclude that we possess jurisdiction to consider an appeal from a decision of a district court rejecting a government official’s claim of entitlement to qualified immunity to the extent that the official maintains that the official’s conduct did not violate clearly established law. Alternatively, to the extent that the appealing official seeks to argue the insufficiency of the evidence to raise a genuine issue of material fact—for example, that the evidence presented was insufficient to support a conclusion that the official engaged in the particular conduct alleged—we do not possess jurisdie *530 tion under § 1291 to consider the claim and, therefore, may not do so absent some independent jurisdictional base. See Johnson, — U.S. at —, 115 S.Ct. at 2156-58; see also Shinault v. Cleveland County Bd. of County Comm’rs, 82 F.3d 367, 370 (10th Cir.1996) (recognizing that jurisdiction is controlled by the portion of the order from which appeal is taken and by argument on appeal); Sanders v. Brundage, 60 F.3d 484, 486 (8th Cir.1995) (explaining that issues raised on appeal control jurisdiction). In other words, we possess no jurisdiction over a claim that a plaintiff has not presented enough evidence to prove that the plaintiff’s version of the events actually occurred, but we have jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them.
Here, Appellants did assert in part that the evidence presented by Winfield was insufficient to raise a genuine issue of material fact necessitating a trial (ie., that the evidence was insufficient to support his factual allegations),[1] and to that extent, we lack jurisdiction pursuant to § 1291 to consider it. Nevertheless, in denying the prison officials’ motion for summary judgment, the district court plainly ruled that Winfield’s legal right to personal security was clearly established. Moreover, Appellants made clear in supplemental briefing after Johnson was decided, and in oral argument before this en banc court, that they press the legal issue of whether the undisputed facts disclose that reasonable officers would have understood that their conduct violated Winfield’s clearly established legal rights. See Miller v. Schoenen, 75 F.3d 1305, 1308-09 (8th Cir.1996). We therefore possess jurisdiction under § 1291 to consider this latter question and turn now to address it.
III.
Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that “their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In analysing an appeal from the rejection of a qualified immunity defense, our first task is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level of particularity. Taylor v. Waters, 81 F.3d 429, 433 (4th Cir.1996). We then consider whether, at the time of the claimed violation, this right was clearly established and “ “whether a reasonable person in the official’s position would have known that his conduct would violate that right.’ ” Id. (quoting Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir.1992)).
Although Winfield made general allegations that his rights under the Fifth, Eighth, and Fourteenth Amendments were violated, the gist of his complaint is that the prison officials were deliberately indifferent to the serious and specific risk of physical harm posed to him by Gibson; thus, the prohibition imposed by the Cruel and Unusual Punishments Clause of the Eighth Amendment and applied to the states through the Due Process Clause of the Fourteenth Amendment is the broad constitutional right that Appellants purportedly infringed. See Wilson v. Seiter, 501 U.S. 294, 296-97, 111 S.Ct. 2321, 2322-23, 115 L.Ed.2d 271 (1991).[2]
*531 The district court ruled that the right to personal security protected by the Eighth Amendment was well established at the time the events underlying this appeal transpired. But, it is axiomatic that defining the applicable right at that degree of abstraction is inappropriate. Anderson, 483 U.S. at 639-40, 107 S.Ct. at 3038-39. Rather,
the right the official is alleged to have violated must have been “clearly established” in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
Id. at 640, 107 S.Ct. at 3039 (citation omitted); see Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (Qualified immunity protects “all but the plainly incompetent or those who knowingly violate the law.”). Thus, we must inquire whether the established contours of the Eighth Amendment were sufficiently clear at the time of the attack to make it plain to reasonable officers that their actions under these particular circumstances violated Win-field’s .rights. In the context of this case, we ultimately are called upon to decide whether it was clearly established in February 1993 that an unarmed prison official would be deliberately indifferent to an inmate’s need for safety if, during an attack by a prisoner armed with a dangerous weapon upon another prisoner, the official instantly mobilized to take control of the situation but failed to intervene immediately. We conclude that it was not.
At the time these events occurred in 1993, it was clear that as a component of their duty to provide inmates with humane conditions of confinement, prison officials were required to “ ‘take reasonable measures to guarantee the safety of the inmates.’” Farmer v. Brennan, 511 U.S. 825, 831, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)). Further, it was well established that encompassed within that duty was a requirement that prison officials take reasonable steps “ ‘to protect prisoners from violence at the hands of other prisoners.’” Id. (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), cert. denied, 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988)); see also Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987). Knowledge by prison officials of a sufficiently serious threat of physical harm posed by other prisoners and deliberate indifference to such a risk plainly amounted to a violation of the Eighth Amendment. See Farmer, 511 U.S. at 831-34 & n. 2, 114 S.Ct. at 1976-77 & n. 2 (noting that Eighth Amendment is violated by prison officials when two requirements met: (1) action or inaction results in or creates a sufficiently serious risk of a deprivation that objectively results in denial of the “minimal civilized measure of life’s necessities” and (2) a “sufficiently culpable state of mind”—here deliberate indifference) (internal quotation marks omitted). Nevertheless, the Court has recognized:
[Pjrison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official’s duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials’ unenviable task of keeping dangerous men in safe custody under humane conditions. Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.
Id. at 842-46, 114 S.Ct. at 1982-83 (citations and internal quotation marks omitted).
We are unable to say that the contours of the Eighth Amendment right, considered at the appropriate level of particularity, were established sufficiently such that a reasonable official would have understood, at that time or indeed today, that Appellants’ response to Gibson’s attack on Winfield was *532 unreasonable. Certainly, this court had made clear that under some circumstances officials may be liable for completely failing to take any action to avert an attack by one prisoner on another when they knew that a substantial risk of harm existed. See, e.g., Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). However, the undisputed facts here demonstrate[3] that Appellants did not violate this clearly established right of Winfield’s. First, it is undisputed that none of the prison officials were aware that Gibson possessed a shank or posed a specific risk to Winfield’s safety prior to the moment Gibson emerged from his cell.[4] Thus, the correctional officers became aware of the risk of harm, at the earliest, when Gibson emerged from his cell and assaulted Officer Williams. See Farmer, 511 U.S. at 844, 114 S.Ct. at 1982 (recognizing that lack of knowledge of the risk is a complete defense to charge of deliberate indifference to a substantial risk of harm). Moreover, it is undisputed that upon seeing Gibson emerge from his cell, the prison officials immediately mobilized to take control of the situation. Officer Walker radioed for assistance instantly. Officer Clatterbuck called out a warning, and all of the officers who had returned to the first floor immediately ran to obtain batons and then proceeded back to the second tier to provide aid in ending the attack. Accepting the undisputed fact that the officers began immediate preparations to safely intervene in the attack as soon as they became aware of the risk, the question becomes whether the two unarmed correctional officers who were present when the attack began violated a clearly established right of Winfield’s to have the officials immediately intervene.
Winfield is unable to point to any decisions establishing that an unarmed prison official exhibits deliberate indifference to an inmate’s reasonable need for safety, or acts unreasonably, by failing to intervene immediately in an attack by one prisoner armed with a dangerous weapon on another. Indeed, all of the authority of which we are aware leads to the conclusion that such heroic measures are not constitutionally required. See Prosser, 70 F.3d at 1008 (“[P]rison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm.”); Mac-Kay v. Farnsworth, 48 F.3d 491, 493 (10th Cir.1995) (Failure to immediately intervene in physical attack by one prisoner, who was wielding a shank, upon another held not to amount to deliberate indifference in part because prison officials had called for backup.); Arnold v. Jones, 891 F.2d 1370, 1372 (8th Cir.1989) (“[U]narmed prison officials have no duty as a matter of law to physically intervene in a prison fight which may cause them serious injury or worsen the situa- *533 tion_”). The correctional officers violated no clearly established right of Winfield’s because they were not required to risk serious bodily harm by entering, unarmed, into a fray with an armed and violent assailant during the short period before assistance arrived. The undisputed facts demonstrate that Appellants’ response to the risk to Win-field’s safety was reasonable. No clearly established law having been violated, the prison officials were entitled to qualified immunity.[5]
IV.
It appears that the principal source of disagreement offered by the dissent concerns our approach to determining the factual basis to which we must look in resolving the legal question over which we possess jurisdiction— perhaps the most difficult aspect of our review of denials of qualified immunity in an interlocutory appeal and one that has not yet been resolved conclusively by the Supreme Court. See Johnson, — U.S. at —, 115 S.Ct. at 2159 (noting that question of how an appellate court should determine “what set of facts to assume when it answers the purely legal question about ‘clearly established’ law” presents a serious problem).
The Johnson Court recognized that it will often be possible for an appellate court to utilize the facts that were assumed by the district court in denying the motion for summary judgment. Id. But, the Court also acknowledged that in some instances the district court will fail fully to set forth the facts on which its decision is based. Id. In that circumstance, the Court explained, “a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.” Id.; Behrens, — U.S. at —, 116 S.Ct. at 842. In our view, when a district court fails fully to set forth the facts supporting its legal conclusion that a government official is not entitled to qualified immunity, the court of appeals must review the materi-' als submitted to the district court to determine what the record, viewed in the light most favorable to the nonmoving party, discloses in order to have a factual basis upon which to base its legal conclusion.
The dissent, however, opines that in directing courts of appeals to determine the facts that district courts “likely assumed,” the Supreme Court indicated that our task is not to attempt to divine what the evidence viewed in the light most favorable to the plaintiff actually showed. Rather, the dissent suggests that we should construct from the record a set of facts that supports the legal conclusion reached by the district court. See infra pp. 542-44. We cannot agree.
The rationale underlying the Johnson decision was that “precedent, fidelity to statute, and underlying policies,” namely “considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources, argue[d] in favor of limiting interlocutory appeals of ‘qualified immunity’ matters to eases presenting [neat] abstract issues of law.” Johnson, — U.S. at —, 115 S.Ct. at 2158. Essentially, the Court concluded that there was little to be gained, incrementally, in terms of providing additional protection to officials and much to be lost in terms of appellate judicial resources by permitting interlocutory appeals maintaining that a district court had erred in concluding that the evidence presented was sufficient to raise a genuine issue of material fact warranting trial. See id. at —, 115 S.Ct. at 2156-59. Accepting as the Johnson Court did, however, that a “cumbersome review” of the record must be undertaken when the district court fails fully to set forth the facts upon which its decision was based, the concerns underlying the holding in Johnson do not counsel in favor of a conclusion that our legal determination should be based upon some mythical set of facts (ie., a set of facts other than those shown by the evidence actually viewed in.the light most favorable to the nonmoving party) that may or may not actually have been relied upon by the district *534 court. Instead, those concerns indicate that the legal decision should be based upon a proper view of the evidence presented, taken in the light most favorable to the nonmoving party. Indeed, the concerns of avoiding unnecessary delay and wise use of judicial resources that led the Johnson Court to its principal holding—that courts of appeals possess jurisdiction to decide only the abstract legal issues on interlocutory review—persuade us that in determining what facts the district court “likely assumed,” we must determine what the evidence actually shows when viewed in the light most favorable to the nonmoving party.
Moreover, the Johnson Court indicated that this was the proper course: In discussing the necessity of determining the factual basis upon which our legal ruling will be premised when a district court fails fully to set forth the factual basis for its legal conclusion, the Johnson Court noted that “a rule that occasionally requires a detailed evidence-based review of the record is still, from a practical point of view, more manageable than” a rule requiring courts of appeals to routinely conduct the same type of review. Id. at —, 115 S.Ct. at 2159. Thus, the Court plainly envisioned that on those infrequent occasions when a district court does not supply the factual basis for its decision, we would be required to undertake the type of de novo review that generally would be prohibited.[6]
Furthermore, the dissent’s suggestion that the correct view of the factual record is not controlling in determining what the district court “likely assumed,” but that instead we should attempt to construct a set of facts supporting the legal decision of the district court, presents an absurd paradox. Employing the dissent’s mode of analysis, we would be required to affirm an obviously incorrect legal conclusion, based on “assumed” and equally incorrect facts, simply because we would be required to “assume” that the district court “likely” took an incorrect view of the facts in order to support the incorrect legal conclusion it reached. And, this result, the dissent maintains, is compelled by the Johnson decision—an opinion grounded in concerns of efficiency and judicial economy. In our view, the position advocated by the dissent surely cannot be the one the Supreme Court intended.
Finally, none of the other courts of appeals that have addressed what the Supreme Court meant when it instructed that we must determine what the district court “likely assumed” have taken the approach urged by the dissent. See Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir.1996) (reviewing record to determine whether genuine issues of material fact existed when district court failed to set forth the factual basis for its legal ruling); Heidemann v. Rother, 84 F.3d 1021, 1027 & n. 4 (8th Cir.1996) (concluding that a determination of what district court “likely assumed” requires court of appeals to undertake usual, de novo review of record to determine what evidence, viewed in light most favorable to the nonmoving party, showed).
Similarly, a question of the proper factual basis for our resolution of the purely legal question over which we possess jurisdiction may arise when a district court bases its decision on stated facts, but other, undisputed, material facts are present that dictate the conclusion that a governmental official is entitled to qualified immunity. ■ For the same reasons that support our conclusion that this court must look to the actual evidence presented viewed in the light most favorable to the nonmoving party when a district court fails to supply the factual basis for its legal decision, we should not ignore other, undisputed, facts in rendering our decision on the legal question. Taking account of an undisputed fact in rendering a legal conclusion neither does violence to “Cohen’s conceptual theory of appealability” nor involves this court in the type of weighing of the record that the Johnson Court found unacceptable. Johnson, — U.S. at —, 115 S.Ct. at 2156-57. Further, a district court does *535 not possess any institutional advantage in the consideration of an undisputed fact, and the acceptance of such a fact does not consume significant appellate resources. See id. at —, 115 S.Ct. at 2157-58. On the other hand, the failure to acknowledge ah undisputed fact could result in considerable delay and inefficiency—for example, if the failure to do so results in the denial of qualified immunity in circumstances when the consideration of the undisputed fact would result in an official’s entitlement to it.
In sum, we conclude that when a district court fails to set forth fully the factual basis upon which its legal conclusion that a governmental official is not entitled to summary judgment on the basis of qualified immunity, this court reviews the evidence properly before the district court for purposes of considering the summary judgment question. It then determines what the evidence, viewed in the light most favorable to the nonmoving party, demonstrated. This is the factual basis that the district court “likely assumed” in rendering its legal conclusion and is the factual basis upon which this court must render its decision on the purely legal issues presented in the appeal. Furthermore, when undisputed material facts are present that the district court did not consider in ruling on the qualified immunity issue, this court need not ignore those facts in rendering its legal decision.

REVERSED

. This is hardly surprising given that the initial briefing was completed before the Supreme Court decided Johnson and that the prior decisions of this court permitted Appellants to raise such a claim. In addition, in this instance an independent jurisdictional basis existed to permit our consideration of the claim because we had granted permission for an interlocutory appeal after the district court entered an order certifying the remainder of the summary judgment order for immediate appeal.

. Because the specific constitutional standard applicable under the Cruel and Unusual Punishments Clause of the Eighth Amendment supplies an "explicit textual source of constitutional protection” for this alleged infringement of Win-field's rights, we need not address a substantive due process claim. Graham v. Connor, 490 U.S. 386, 395 & n. 10, 109 S.Ct. 1865, 1871 & n. 5, 104 L.Ed.2d 443 (1989). Further, because Appellants are not federal actors, our analysis would be governed by the Fourteenth Amendment rather than the Due Process Clause of the *531 Fifth Amendment in any event. See U.S. Const. amends. V, XIV.

. Although summarily setting forth some of the facts, in judging whether the officers' conduct violated clearly established law, the district court apparently failed to recognize the materiality of other, undisputed facts disclosed in the affidavits submitted by Appellants—particularly those facts surrounding the actions taken by .the various corrections officers in response to Gibson's attack on Winfield. Because the information concerning the officers' actions that was revealed in Appellants' affidavits was not called into question by Winfield’s opposing submission, either direct- . ly or by an appropriate inference from the facts as asserted by Winfield, we properly may consider these facts as undisputed for purposes of addressing the legal issue presented. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

. The district court concluded that reasonable officials in Appellants' positions would have known that permissive attitudes toward alcohol and dangerous weapons would violate Winfield's clearly established right to physical safely. This reasoning is misdirected. In assessing whether Appellants are entitled to qualified immunity, the court must inquire whether reasonable officers in Appellants' positions would have recognized that their conduct violated Winfield's rights. See Anderson, 483 U.S. at 640, 107 S.Ct. at 3039. Thus, the pertinent question is whether the law was clearly established that a failure by prison officials to confiscate immediately alcoholic beverages possessed by inmates (Winfield concedes that no Appellant had any knowledge concerning possession of weapons) constituted an unreasonable response to a substantial risk to inmate safety. Winfield points to no decisions even arguably supporting such a conclusion, and our research has failed to disclose any. We hold that to the extent that the district court based its decision on a failure to confiscate the wine, Appellants were entitled to summary judgment on the basis of qualified immunity.

. Since the corrections officers who were alleged to have been directly involved in the events cannot be found to have violated any clearly established right of Winfield's, Warden Bass, who was not present and whose only connection to the incident was his supervisory role over the officers, cannot be held liable.

. That is not to say that when the factual basis for the district court decision denying qualified immunity is unclear, courts of appeals have full jurisdiction to consider an appeal of a factual nature. Instead, consideration of the factual record must be limited to determining the appropriate factual basis,for resolving the purely legal issue presented. We recognize, of course, that in practice this distinction may be more theoretical than practical.